UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

JEFFREY L. NIELSEN                                    Civ. No. 07-1349 (RHK/JSM)

                        Plaintiff,

v.
                                                     REPORT AND RECOMMENDATION
UNITED STATES BUREAU OF
LAND MANAGEMENT and
UNITED STATES DEPARTMENT OF
INTERIOR,

                        Defendants.

        JANIE S. MAYERON, U.S. Magistrate Judge

        The above matter came on before the undersigned upon plaintiff's Motion for In Camera Review of Documents Withheld and Redacted on Claims of Deliberative Privilege and for Summary Judgment [Docket No. 19] and defendants' Motion for Summary Judgment [Docket Nos. 22, 25].  George Eck, Esq. appeared on behalf of plaintiff; Fredrick Siekert, Assistant United States Attorney, appeared on behalf of defendants.  This matter has been referred to the undersigned Magistrate Judge for a Report and Recommendation by the District Court pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.1(c).

## I.    INTRODUCTION

        Plaintiff, Jeffrey Nielsen, has filed a Complaint under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, requesting that the United States Bureau of Land Management ("BLM") and the United States Department of the Interior ("DOI") be required to produce (1) documents pertaining to a piece of property known as the Ballardini Ranch in Washoe County, Nevada ("Ballardini Ranch Documents"); and (2)

documents relating to the legislative history of the White Pine Conservation, Recreation, and Development Act ("White Pine Act Documents").  The parties have now filed cross-motions for summary judgment.  As part of plaintiff's motion, plaintiff has asked that the Court order defendants to promptly deliver to the Court for in camera review complete copies of all documents withheld or redacted based upon a claim of deliberative process privilege and grant summary judgment to him with respect to each such document or portion withheld.  Defendants have requested that plaintiff's motion be denied and have affirmatively requested summary judgment in their favor on the basis that they properly withheld certain documents or portions, and as such, fully complied with Nielsen's FOIA request.

## II.    STANDARD OF REVIEW FOR SUMMARY JUDGMENT

Summary judgment is proper if, drawing all reasonable inferences favorable to the non-moving party, there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); Celeotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986); see also Unigroup, Inc. v. O'Rourke Storage & Transfer Co., 980 F.2d 1217, 1219 (8th Cir. 1999).  "[S]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to secure the just, speedy, and inexpensive determination of every action."  Celotex, 477 U.S. at 327.  "'Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.'"  DePugh v. Smith, 880 F. Supp. 651, 656 (N. D. Iowa 1995) (quoting Anderson, 477 U.S. at 248).

The party moving for summary judgment bears the burden of showing that the material facts in the case are undisputed.  Celotex Corp., 477 U.S. at 322-23; see also Mems v. City of St. Paul, Dep't of Fire & Safety Servs., 224 F.3d 735, 738 (8th Cir. 2000).   If the moving party has carried its burden, the non-moving party must demonstrate the existence of specific facts in the record that create a genuine issue for trial.  Anderson, 477 U.S. at 256; Krenik v. County of LeSueur, 47 F.3d 953, 957 (8th Cir. 1995).  "The nonmoving party may not rest on mere allegations or denials, but must show through the presentation of admissible evidence that specific facts exist creating a genuine issue for trial."   Minnesota Laborers Health & Welfare Fund v. Swenke, 2003 U.S. Dist. LEXIS 11439, *4-5 (D. Minn. 2003) (citations omitted).  The non-moving party "must substantiate his allegations with sufficient probative evidence that would permit a finding in [their] favor based on more than mere speculation, conjecture, or fantasy."   Wilson v. Int'l Bus. Mach. Corp., 62 F.3d 237, 241 (8th Cir. 1995).   Summary judgment is the preferred procedural vehicle for resolving FOIA disputes.  See Evans v. U.S. Office of Personnel Mgmt., 276 F. Supp.2d 34, 37 (D.D.C. 2003).

## III.    FACTUAL BACKGROUND

### A.    Attempted Acquisition of the Ballardini Ranch Property

The corporation Evans Creek, LLC ("Evans Creek") was formed in 2001 to own and develop for residential use more than 1000 acres of the Ballardini Ranch, located in Washoe County, Nevada.  See Affidavit of Jeffery L. Nielsen in Support of Motion for *In Camera* Review of Documents Withheld and Redacted on Claims of Deliberative Privilege, and for Summary Judgment ("Nielsen Aff."), ¶ 16.  Plaintiff Jeffery Nielsen is

the owner of Evans Creek and its manager.  Id., ¶ 1; see also Declaration of Debra K.

Madaras ("Madaras Decl."), Ex. 4.

In 2001, Washoe County entered into negotiations with Evans Creek to purchase

some or all of the Ballardini Ranch property.  See Nielsen Aff., ¶ 17. On September 28,

2001, Washoe County submitted a "Nomination Package for Land Acquisition of the

Ballardini Ranch" under the Southern Nevada Public Lands Management Act

("SNPLMA") of 1998, P.L. 105-263, 112 Stat. 2343, with an appraisal value of $15.0

million.  Id., Ex. M (Nomination Proposal).   In March of 2002, the BLM submitted a

Round 3 Preliminary Recommendation, which listed and identified properties for

acquisition, including the Ballardini Ranch property with an acquisition price of $15.0

million.  Id., Ex. N.  On May 9 and 10, 2002, Evans Creek submitted letters to Washoe

County stating that it was withdrawing from the acquisition process.  Id., Exs. P, Q (May

9 and 10, 2002 Letters to the Washoe County Manager).   On May 14, 2002, the

Washoe County Manager acknowledged receipt of these letters from Evans Creek and

that she had notified the Project Office of the SNPLMA of this decision.  Id., Ex. R (May

14, 2002 email from Katy Singlaub to Timothy Nelson).

Unbeknownst to plaintiff, on November 5, 2002, the United States Secretary of

the Interior, Gale Norton, conditionally approved the expenditure of SNPLMA funds that

expressly included the Ballardini Ranch property.  Id., Ex. V (Conditional Approval).   On

August 13, 2003, Evans Creek learned for the first time that the BLM had never

withdrawn the Ballardini Ranch from consideration for Round 3 of the SNPLMA

acquisition.  Id., ¶ 28; Ex. W.  On August 19, 2003, Evans Creek's legal counsel sent a

letter notifying Secretary Norton that it had revoked its willingness to sell the Ballardini

Ranch property 15 months earlier, and demanding that it be immediately removed as a candidate for acquisition.  Id., Ex. X (August 19, 2003 Letter).   On August 27, 2003, Evans Creek's counsel received a letter from Elizabeth Aberant, Lead Realty Specialist for SNPLMA Acquisitions, stating that the Ballardini Ranch property had been terminated from the list of acquisitions approved by the Secretary of the Interior.  Id., Ex. Y (August 27, 2003 Letter).

Evans Creek commenced a civil rights action against Washoe County in the United States District Court, District of Nevada.  Id., ¶ 33.  In 2006, the case settled with Washoe County agreeing to pay Evans Creek $13.5 million and agreeing to abandon any right to use eminent domain to seize the property.  Id., ¶¶ 33-34.

On August 1, 2006, Senator John Ensign (R-NV) and Senator Harry Reid (D-NV) introduced the White Pine legislation (S. 3772).  See Library of Congress, Thomas Legislative History Site, http://thomas.loc.gov/cgi-bin/bdquery/z?d109:s.03772:.  Nielsen claimed that after settling with Washoe County, he learned that Senator Reid had promised Washoe County that if it proceeded to acquire some or all of Ballardini Ranch, he would obtain federal funds for the acquisition under SNPLMA via the White Pine Act.  See Nielsen Aff., ¶ 35. The White Pine Act was enacted into law on December 20, 2006.  See Declaration of Robin Friedman ("Friedman Decl."), ¶ 2.

### B.   2003 FOIA Request by Timothy Nelson

On or about September 17, 2003, Timothy Nelson, an officer and consultant of Evans Creek, submitted a FOIA request to the BLM seeking documents related to the BLM's efforts to acquire the Ballardini Ranch.  See Nielsen Aff., ¶ 21; Affidavit of Timothy J. Nelson in Support of Motion for *In Camera* Review of Documents Withheld

and Redacted on Claims of Deliberative Privilege and for Summary Judgment ("Nelson Aff."), ¶ 1, Ex. A (September 17, 2003 FOIA Request); <u>see</u> <u>also</u> Friedman Decl., Ex. 3 (Recommendation of United States Magistrate Judge at p. 2); <u>see</u> <u>also</u> Declaration of Richard H. Brown ("Brown Decl."), ¶ 4.  In particular, Nelson sought documents related to: (1) all communications between Washoe County officials and staff and the BLM concerning the nomination for or the acquisition of the Ballardini Ranch under the SNPLMA, as part of Round 3 SNPLMA acquisitions or previous or subsequent rounds; (2) all communications to or from lawyer Steve Walther and his law firm or an organization called Protect Our Washoe and the BLM concerning the nomination for or the acquisition of the Ballardini Ranch under the SNPLMA, as part of Round 3 SNPLMA acquisitions or previous or subsequent rounds; (3) all communications to or from elected officials, government staff (local, state and federal), non-profit or charitable or conservation organizations, or any individuals, and the BLM concerning the nomination for or acquisition of the Ballardini Ranch under the SNPLMA, as part of the Round 3 SNPLMA acquisitions or previous or subsequent rounds; (4) all communications to or from representatives of the United States Forest Service and the BLM concerning the Ballardini Ranch or its acquisition by any governmental or public agency; (5) all communications to or from the press or media and the BLM concerning the Ballardini Ranch or its acquisition by any governmental or public agency; (6) all communications between BLM representatives and all intra-agency BLM documents pertaining to the Ballardini Ranch, including its potential acquisition by the BLM or other governmental agencies; (7) all documents concerning the calculation of, suggestion or origin of the $15.0 million acquisition price set forth during Round 3 of the SNPLMA acquisition

nominations; and (8) all other documents pertaining to the consideration of, nomination of, and subsequent termination of the Ballardini Ranch for proposed acquisition under Round 3 of the SNPLMA or otherwise.  <u>See</u> Nelson Aff., Ex. A; <u>see</u> <u>also</u> Friedman Decl., Ex. 2, Declaration of Donald S. Harris ("Harris Decl."), ¶ 3.

In response to Nelson's FOIA request, the BLM produced 16 pages of documents to Nelson from the BLM's Washington Office.  <u>See</u> Harris Decl., ¶ 5.  The BLM Las Vegas Office found 114 pages of responsive documents, of which 90 pages were produced to Nelson.  <u>Id.</u>  Twenty-four pages were withheld by the BLM either under the deliberative process or personal privacy exemptions of FOIA.  <u>Id.</u>; <u>see</u> <u>also</u> Nelson Aff., ¶ 2.

In June of 2004, Nelson filed a FOIA action against the BLM and the DOI in the United States District Court, District of Colorado ("Nelson FOIA action").  <u>See</u> Nelson Aff., ¶ 5; <u>see</u> <u>also</u> Friedman Decl., ¶ 4, Ex. 3.  Nelson's major contentions were that the BLM and the DOI failed to conduct an adequate search for documents responsive to his FOIA requests, defendants failed to describe the withheld documents pursuant to the deliberative process exemption, and defendants had failed to meet their burden of establishing that the documents fell within the scope of the deliberative process exemption.  <u>See</u> Friedman Decl., Ex. 3 (Recommendation of United States Magistrate Judge at pp. 5-11).  The Honorable United States Magistrate Judge Craig B. Shaffer recommended that defendants' motion for summary judgment be granted on the grounds that defendants had made an adequate showing that their search was reasonably calculated to uncover all of the relevant documents.  <u>Id.</u> at pp. 6-9.  In addition, the Magistrate Judge concluded that the documents withheld under the

deliberative process exemption were properly withheld on that basis.  Id. at pp. 9-14.

The Magistrate Judge's Report and Recommendation was accepted by the Honorable

United States District Judge Edward W. Nottingham on March 31, 2006.  Id., Ex. 3

(Order Accepting Magistrate Judge's Recommendation).

      **C.**    **FOIA Request by Plaintiff**

      On September 21, 2006, plaintiff filed a FOIA request directed to the BLM.  See

Nielsen Aff., ¶ 2, Ex. A.   This request asked for documents and correspondence

(including emails) concerning the following: (1) the nomination of the Ballardini Ranch

for acquisition under Round 3 of the SNPLMA program and/or subsequent withdrawal or

termination of the Ballardini Ranch from Round 3; (2) proposals for or consideration of

acquisition for the Ballardini Ranch under later rounds of the SNPLMA program; (3) the

proposed funding or acquisition of portions of the Ballardini Ranch, or any other

properties in Washoe County, under the White Pine Act; (4) any other federal or state

legislation proposals to fund the acquisition of the Ballardini Ranch property; (5)

documents, correspondence and emails to or from Mike Dwyer, former project manager

of the SNPLMA in the BLM Las Vegas, Nevada field office that related to the Ballardini

Ranch; (6) documents, correspondence and emails to and from Washoe County

officials, representatives or staff (including Katy Singlaub (Washoe County Manager),

Karen Mullen, Madelyn Shipman) that related to the Ballardini Ranch; (7) documents,

correspondence and emails to or from Robert Abbey, former Director of the BLM's

Nevada state office, that related to the Ballardini Ranch; (8) documents,

correspondence and emails to or from John Singlaub, former Director of the BLM's

Nevada field office, that related to the Ballardini Ranch; (9) documents, correspondence

and emails to or from attorney Steven Walther that related to the Ballardini Ranch; (10) documents, correspondence and emails to or from United States Senators Harry Reid, John Ensign, or their staff or representatives that related to the Ballardini Ranch; and (11) documents, correspondence and emails to or from any elected officials, staff or representatives of Washoe County pertaining to settlement of claims with Evans Creek, concerning the Ballardini Ranch.  <u>See</u> Nielsen Aff., ¶ 2, Ex. A (September 21, 2006 FOIA Request).

On October 5, 2006, the BLM sent a letter to plaintiff seeking clarification from him regarding the documents he was seeking, including the timeframe of the requested documents and the geographical location of individuals listed in the initial request.  <u>See</u> Nielsen Aff., Ex. B (October 5, 2006 Letter from the BLM to Nielsen).  In addition, as plaintiff did not indicate a willingness to pay fees for duplication, the BLM asked that he specify the amount he was willing to pay to process his request based on the various fee categories identified by the BLM in the letter (<u>e.g.</u> commercial use, other (includes individuals and organizations)).  <u>Id.</u>

On October 13, plaintiff responded to this request for clarification.  First, he indicated that he was an individual seeking information for personal use and not for commercial use.  <u>See</u> Nielsen Aff., Ex. C (October 13, 2006 Letter from Nielsen to BLM-Second FOIA request).  Second, with respect to items 1 through 11, he stated he was asking that the BLM to search the Nevada State Office in Reno, Nevada; the Las Vegas Field Office; the SNPLMA program office in Las Vegas; the Carson City Field Office; and the Headquarters Office in Washington, D.C.  <u>Id.</u>  Third, he set out various timeframes for which he was seeking information for each of the 11 items (except for

item 5), and indicated with greater specificity where or with whom he believed the documents sought by items 5 through 11 could be found.  Id.

The FOIA Coordinator for the BLM, Richard Brown, processed both Nelson and plaintiff's FOIA requests.  See Brown Decl., ¶¶ 3, 5.  In processing plaintiff's FOIA request, Brown searched the same offices that were searched in response to Nelson's FOIA request: the BLM Nevada Las Vegas Field Office, the BLM Nevada Carson City Field Office, and the BLM Nevada State Office in Reno.  Id., ¶ 5.  Brown asked these offices to determine whether there had been any additional documents generated regarding the Ballardini Ranch beyond those documents that had been earlier provided to Nelson.  Id.  The field offices advised that there were no such additional documents. Id.

On January 9, 2007, the BLM responded to plaintiff's FOIA request.  See Nielsen Aff., Ex. F (January 9, 2007 Letter—FOIA Response); Brown Decl., Ex. A (same).  The response did not address items 3 and 4 of plaintiff's FOIA request and instructed plaintiff to contact Amy Gbenou at the BLM Washington office regarding the White Pine Act Documents.  Id.  As to the remaining items, the response stated that the BLM Nevada state office found 123 pages of responsive documents, 101 pages which were provided to plaintiff in full, and 12 documents were provided to plaintiff in a redacted format.  Id.  Five of these 12 documents were redacted because they contained personal information protected by Exemption 6 of FOIA, 5 U.S.C. § 552(b)(6); an additional five documents were redacted because they contained material that the BLM claimed was deliberative and pre-decisional in nature and thereby protected by Exemption 5 of FOIA, 5 U.S.C. § 552(b)(5); and an additional 10 pages of documents

were completely withheld based on Exemption 5.  Id.  In the end, the BLM released the same documents to plaintiff, made the same redactions to documents and made the same withholding of documents that it made when it responded to Nelson's earlier request.  See Brown Decl., ¶ 6.  In addressing the merits of its withholding or redaction of the Ballardini Ranch Documents in the instant case (i.e. those documents responsive to items 1, 2, 5-11), the Government has relied on the index described in the Declaration of Donald Harris submitted in the Nelson FOIA action, which sets forth the documents produced and why particular documents were redacted or withheld in their entirety   See Friedman Decl., ¶ 6, Ex. 2 (hereafter referred to as ("Harris Vaughn Index").

On January 17, 2007, plaintiff wrote a letter to Amy Gbenou asking that White Pine Act Documents, as reflected in his FOIA request, be produced.  See Nielsen Aff, ¶ 8, Ex. G.  On January 23, 2007, Gbneou faxed to plaintiff a letter stating that she was hopeful to have a complete response to him by February 2, 2007.  Id., ¶ 9, Ex. I.  No further response came from Gbenou.

On February 27, 2007, plaintiff initiated the present FOIA action.

Subsequent to plaintiff's commencement of the suit, on May 9, 2007 and July 10, 2007, plaintiff was provided with 37 documents relating to the White Pine Act.  See Friedman Decl., ¶¶ 8-9; Nielsen Aff., ¶ 11, Exs. J (May 9, 2007 Letter from Friedman to Nielsen), K (July 10, 2007 Letter from Friedman to Nielsen).  Twenty pages of these 37 documents were produced with redactions.[1]  Id.  The redactions were based on the

---

[1]     Plaintiff asserted that 22 pages of the documents produced contained redactions based on the deliberative process privilege.  See Nielsen Aff., ¶ 11.

assertion that the withheld information was deliberative and pre-decisional in nature under Exemption 5 of FOIA.  See Friedman Decl., ¶ 8; Nielsen Aff., ¶ 11.

On September 18, 2007, defendants issued the Declaration of Robin Friedman, counsel for DOI, which indexed and set forth the grounds for either withholding responsive documents in their entirety or redacting certain portions of responsive documents that were produced to plaintiff.  In this Declaration, Friedman also indicated that as a result of plaintiff's challenge to the adequacy of the search for the White Pine Act Documents, the BLM was conducting a supplemental search for responsive documents, and that a supplemental declaration and index would be prepared if necessary.  See Friedman Decl. ¶ 10.

On September 26, 2007, Friedman, Brown (the FOIA Coordinator for the BLM's Nevada office), Laura Bell (BLM FOIA Administrator), Craig Leff (BLM Acting Chief of the Legislative Affairs Group in Washington, D.C.), and Jane Freeman (BLM SNPLMA Coordinator) conferred to ascertain which offices of the BLM were likely to possess documents responsive to plaintiff's FOIA request for White Pine Act Documents.  See Supplemental Declaration of Robin Friedman ("Supp. Friedman Decl."), ¶ 9.  Leff of the Legislative Affairs Group agreed to conduct another search of the BLM Legislative Affairs Group.  Id.  As a consequence, members of the Legislative Affairs Group who had worked on the White Pine Legislation conducted a follow-up search of emails, WP files and paper files using the following search terms: "Ballardini Ranch", "Washoe County"; "White Pine" and "S. 3772."  Id., ¶ 10.  Bell, the BLM FOIA Administrator, also contacted the Office of the Director, BLM, the Office of the BLM State Director in Nevada, and the FOIA Coordinator, Nevada State Office, requesting that they search

for responsive documents involving the White Pine legislation or any other legislation that pertained to the acquisition of the Ballardini Ranch or any other properties in Washoe County.  Id.  These additional searches resulted in the discovery of 33 additional documents.  Id., ¶ 11.  The documents were numbered as WP38-71 and released to plaintiff's counsel in their entirety.  Id., ¶¶ 11, 12; see also Nielsen Aff., ¶ 12, Ex. L (October 26, 2007 Letter from Friedman Releasing WP38-71 to Plaintiff's Counsel).

In addition, Brown, the FOIA Coordinator for the BLM's Nevada office, contacted the following people seeking documents pertaining the White Pine legislation and the Ballardini Ranch: Ron Wenker, BLM State Director in Nevada; Amy Lueders, the BLM Nevada Associate State Director; Patrick Gubbins, the Branch Chief for the Division of Natural Resources, Lands, and Planning, Nevada State Office; Jim Stobaugh, the Lands Team Lead for the Division of Natural Resources, Lands, and Planning, Nevada State Office; Jane Freeman, Special Legislation Project Manager for the Division of Natural Resources, Lands, and Planning, Nevada State Office; and Libby White, the Realty Specialist, Division of Land Sales and Management, Las Vegas Field Office. See Brown Decl., ¶ 7.   No additional documents responsive to plaintiff's FOIA request were found.  Id.

## IV. DISCUSSION

### A. Is the BLM is an Agency for the Purposes of FOIA?

Defendants first argued that the BLM is not a proper defendant in this case, because it does not qualify as an agency for the purposes of FOIA.  See Memorandum

of Law in Support of Defendants' Motion for Summary Judgment ("Defs.' Mem.") at p. 12.

FOIA applies to federal government agencies. <u>See</u> 5 U.S.C. § 552(a).   FOIA incorporates the definition of "agency" found under the Administrative Procedure Act ("APA"), 5 U.S.C. § 551(1).   <u>See</u> 5 U.S.C. § 552(f)(1).   Under the APA, an "agency" is defined as "each authority of the Government of the United States, whether or not it is within or subject to review by another agency."  5 U.S.C. § 551(1).

FOIA expanded the APA definition of "agency" to:

> [I]nclude any executive department, military department, Government corporation, Government controlled corporation, or other establishment in the executive branch of the Government (including the Executive Office of the President), or any independent regulatory agency.

5 U.S.C. § 552(f)(1) (emphasis added).

The United States District Court, District of Colorado, held in the Nelson FOIA action that the BLM is not an agency for the purposes of FOIA.   <u>See</u> <u>Nelson v. U.S Bureau of Land Management, et al.</u>, No. 04-cv-01320-EWN-CBS (D. Colo. 2005) (July 13, 2005 Report and Recommendation at pp. 16-17, affirmed by Order Accepting the Report and Recommendation), attached as Ex. 3 to the Friedman Decl.  The basis for that decision was that the BLM was classified as a "<u>constituent bureau</u>" of the DOI, and therefore, was not an agency for the purposes of FOIA, under any of the categories set forth in § 552(f)(1).   <u>See</u> Friedman Decl., Ex. 3 (<u>Nelson</u> Report and Recommendation) at p. 17.

The United States Supreme Court has characterized the BLM as "an agency within the Department of Interior."  <u>Norton v. Southern Utah Wilderness Alliance</u>, 542

U.S. 55, 58 (2004).   DOI regulations cited by defendants and the Magistrate Judge in the Nelson FOIA action pertaining to the Privacy Act,[2] provide that "for purposes of this subpart, a 'bureau' is any constituent bureau or office of the Department, including the Office of the Secretary and any other Departmental office."   43 C.F.R. § 2.46(b).

This Court finds that the <u>Nelson</u> court's determination that the BLM constituted a constituent bureau, and as such, was not a FOIA agency, is contrary to the intent of Congress when it added language to § 552(f)(1) in 1974 for the purpose of expanding FOIA's coverage and encompassing entities "that might have eluded the APA's definition in § 551(1), which FOIA had incorporated by reference."   <u>Energy Research Found. v. Def. Nuclear Facilities Safety Bd.</u>, 917 F.2d 581, 583 (D.C. Cir. 1990) (citing H.R. Conf. Rep. No. 1380, 93d Cong., 2d Sess. 14 (1974); H.R.Rep. No. 876, 93d Cong., 2d Sess. 8 (1974); S.Rep. No. 854, 93d Cong., 2d Sess. 33 (1974), 1974 U.S. Code Cong. & Admin. News 6267); <u>see</u> <u>also</u> <u>Cotton v. Heyman</u>, 63 F.3d 1115, 1121 (D.C. Cir. 1995) ("Congress thus incorporated in FOIA the APA definition, quoted above, and added the FOIA definition of agency to expand, rather than limit, its coverage.").   As such, this Court will not find that merely because the word "constituent" is not included in § 552(f)(1), the BLM cannot be considered an agency under FOIA, especially when § 551(1) provides that an agency is each authority of the Government of the United States, <u>whether or not it is within or subject to review by another agency</u>." (emphasis added).   In other words, merely because the BLM agency is under the DOI, as a constituent agency, does not mean that the BLM cannot be considered an agency

---

[2]      This Court notes that 5 U.S.C.A. § 552a(a)(1) provides that the term "agency" in the Privacy Act means agency as defined in 5 U.S.C.A. § 552(e) (now § 552(f)(1)) of FOIA.

for the purposes of FOIA.  See generally, Formaldehyde Institute v. Department of Health and Human Services, 889 F.2d 1118, 1121 n. 2 (D.C. Cir. 1989) (citing 5 U.S.C. § 551) (implied overruling on other grounds) (finding that the Centers for Disease Control, like its Department of Health and Human Services "co-constituents" the Public Health Service and National Institute for Occupational Safety and Health,  is an "agency" subject to the application of FOIA); Lair v. Dep't of Treasury, No. 03-827, 2005 WL 645228, at *3 (D.D.C. March 21, 2005) (holding that naming component agencies as the defendant is proper because an agency "need not be a cabinet-level agency" under the FOIA).

The more relevant inquiry for determining if the BLM is an agency for the purpose of FOIA, is whether it is an "'administrative unit with substantial independent authority in the exercise of specific functions.'"  Prison Legal News v. Lappin, 436 F. Supp.2d 17, 22 (D.D.C. 2006) (quoting Soucie v. David, 448 F.2d 1067, 1073 (D.C. Cir. 1971)).[3]

In this case, the BLM manages public lands (other than designated wildernesses) according to the Federal Land Policy & Management Act of 1976, 43 U.S.C. § 1701 et seq.; see also Norton, 542 U.S. at 58 ("Almost half the State of Utah, about 23 million acres, is federal land administered by the Bureau of Land Management (BLM), an agency within the Department of Interior. For nearly 30 years, BLM's management of public lands has been governed by the Federal Land Policy and Management Act of 1976 (FLPMA). . . .").  The BLM's own website demonstrates that it has substantial independent authority in the exercise of specific functions:

---

[3]   This Court notes that when Congress added the language to FOIA defining an agency under FOIA, it was attempting to codify Soucie.  See Meyer v. Bush, 981 F.2d 1288, 1291-92 (D.C. Cir. 1993).

> The BLM is responsible for carrying out a variety of programs for the management and conservation, of resources on 258 million surface acres, as well as 700 million acres of subsurface mineral estate, These public lands make up about 13 percent of the total land surface of the United States and more than 40 percent of all land managed by the Federal government.

http://www.blm.gov/wo/st/en/info/About_BLM.2.html.

Further, the BLM is a major component of the DOI that administers its own FOIA program.  See 43 C.F.R. § 2.3(d); 43 CFR Pt. 2, App. A.  In this regard, the BLM's website, as it relates to FOIA, provides:

> It is the policy of BLM to make records available to the public to the greatest extent possible in keeping with the spirit of the Freedom of Information Act (FOIA), the Privacy Act, and Office of Management and Budget requirements.   The Washington Office Freedom of Information Act and Privacy Act Division/Office is responsible for administering policies, programs, and procedures to ensure compliance with the Freedom of Information Act (FOIA) and the Privacy Act (PA), 5 U.S.C. 552 and 5 U.S.C. 552a, respectively. If you have any comments on this page or any problems with FOIA requests you should contact the BLM WO FOIA Liaison, Ms. Laura F. Bell at 202-452-5012.

http://www.blm.gov/wo/st/en/res/FOIA.html.

It is evident from the relevant statutory and regulatory authority, along with the BLM's own description of its activities, that the BLM has substantial independent authority in the exercise of specific functions pertaining to the administration of and management of a large amount of land in the United States, including its resources.  In addition, the regulations and BLM's representations demonstrate that it is in charge of running its own FOIA program.  For all of these reasons, this Court concludes that the BLM is an "agency" for the purposes of FOIA, and as such, that defendants' Motion for

Summary Judgment on the basis that the BLM is not a proper party under FOIA should be denied.

### B.      Res Judicata and Collateral Estoppel

As stated previously, the District Court of Colorado, dismissed Nelson's FOIA action against the BLM and DOI relating to Ballardini Ranch documents on summary judgment because defendants had made an adequate showing that their search was reasonably calculated to uncover all relevant documents and because the documents withheld under the deliberative process exemption were properly withheld on that basis. See Friedman Decl., Ex. 3 (Recommendation of United States Magistrate Judge at pp. 6-14).  Defendants argued that because both plaintiff and Nelson were officers of Evans Creek, both made identical FOIA requests for documents pertaining to the Ballardini Ranch, and plaintiff consulted and cooperated with Nelson on Nelson' FOIA action, plaintiff's FOIA claims regarding the Ballardini Ranch Documents are barred by the doctrines of res judicata and collateral estoppel.   See Memorandum of Law in Opposition to Plaintiff's Motion for In Camera Review and for Summary Judgment ("Defs.' Opp. Mem.") at pp. 3-4.[4]

"'Res judicata' is the term traditionally used to describe two discrete effects: 1) what we now call claim preclusion, which is a valid final adjudication of a claim precludes a second action on that claim or any part of it; and 2) issue preclusion, long called 'collateral estoppel,' which traditionally occurs where an issue of fact or law, actually litigated and resolved by a valid final judgment, binds the parties in a subsequent action, whether on the same or a different claim.'"   Leonard v.

---

[4]      Defendants do not contend that plaintiff is precluded from challenging their responses to his FOIA requests with respect to the White Pine Act Documents.

Southwestern Bell Corp. Disability Income Plan, 341 F.3d 696, 701 (8th Cir. 2003) (quoting Thomas v. General Motors Corp., 522 U.S. 222, 233 n. 5 (1998)).  Res judicata can serve to preclude an identical FOIA request, assuming that that a post-judgment event has not given rise to a new claim.  See ACLU v. DOJ, 321 F. Supp.2d 24, 34 (D.D.C. 2004).  A party asserting that a claim is barred by res judicata (claim preclusion) must show: "(1) the first suit resulted in a final judgment on the merits; (2) the first suit was based on proper jurisdiction; (3) both suits involve the same parties (or those in privity with them); and (4) both suits are based upon the same claims or causes of action."  Costner v. URS Consultants, Inc., 153 F.3d 667, 673 (8th Cir. 1998) (citations omitted).  Likewise, in order for order for collateral estoppel (issue preclusion) to bar litigation of an issue; the issue sought to be precluded must be the same as that involved in the prior action; (2) the issue must have been litigated in the prior action; (3) the issue must have been determined by a valid and final judgment; (4) the determination must have been essential to the prior judgment; and (5) the estopped party must be a party or in privity with a party to the prior litigation.  See Mille Lacs Band of Chippewa Indians v. State of Minn., 124 F.3d 904, 922 (8th Cir. 1997) (citations omitted).  Preclusion is an affirmative defense and the burden of proof to establish such a defense falls on the defendant.  See Taylor v. Sturgell, 128 S.Ct. 2161, 2179-80 (2008) (citation omitted).

Defendants maintained that as it relates to the Ballardini Ranch Documents, plaintiff raised the same issues as Nelson in the Nelson FOIA action, as the documents sought were the same, the BLM responded in the same manner, and plaintiff reiterated the same claims and arguments submitted by Nelson.  See Defs.' Opp. Mem. at p. 4.

Further, defendants asserted that the Colorado court entered a final judgment on the merits of Nelson's claims and ruled in favor of the DOI and the BLM on all of the issues raised by Nelson that plaintiff is now attempting to raise in the present case. Id. at pp. 4-5.

As to privity, defendants argued that plaintiff was in privity with Nelson because they are both officers of Evans Creek and therefore, they share a common economic interest as it related to the Ballardini Ranch. Id. at p. 4. Defendants further emphasized that plaintiff and Nelson communicated and consulted with each other during their respective cases, regardless of whether they were involved with each other's litigation decisions. Id.

Plaintiff countered that he was not in privity with Nelson because Nelson did not and could not have represented plaintiff legally in his FOIA action. See Reply Memorandum of Law in Support of Motion for In Camera Review of Documents Withheld and Redacted on Claims of Deliberative Privilege and for Summary Judgment ("Reply Mem.") at p. 3. Nelson represented that while plaintiff did consult and cooperate with him regarding Nelson's FOIA request and subsequent legal action, Nelson also stated that plaintiff did not seek control nor did he control Nelson's decisions in connection with Nelson's FOIA request and subsequent FOIA action.[5] See Nelson Aff., ¶ 6.

---

[5]    Plaintiff also argued at the hearing that preclusion should not apply because his FOIA requests were broader than those made by Nelson. However, plaintiff's FOIA request pertaining to Ballardini Ranch (not the request for documents relating to the White Pine Act) is subsumed within Nelson's broad FOIA request in which he asked for any document involving the consideration of, nomination of, and subsequent termination of the Ballardini Ranch for proposed acquisition. Compare Nielsen Aff., Ex. A and Nelson Aff., Ex. A.

The general rule is that a litigant is not bound by a judgment to which he was not a party. See Taylor, 128 S.Ct. at 2175 (citations omitted). However, the Supreme Court has recognized certain exceptions to this rule, including representative suits brought by fiduciaries. Id. at 2172-73; (citations omitted); see also Yankton Sioux Tribe v. U.S. Dept. of Health and Human, --- F.3d ----, 2008 WL 2628931 at *4 (8th Cir. July 07, 2008) (citation omitted).

In this case, plaintiff represented that he is an owner of Evans Creek and that Nelson is an officer and consultant of Evans Creek. See Nielsen Aff., ¶¶ 1, 21. Whether or not Nelson, as an officer of Evans Creek would qualify as a fiduciary, his representation of plaintiff, a nonparty, is adequate for preclusion purposes only if, at a minimum: (1) that the interests of non party and his representative are aligned; (2) "either the party understood [himself] to be acting in a representative capacity or the original court took care to protect the interests of the non party"; and (3) there was notice of the original suit to the person who is alleged to have been represented. See Taylor, 128 S.Ct. at 2176; see also Yankton Sioux Tribe, --- F.3d ----, 2008 WL 2628931 at *4.

Based on the undisputed evidence before this Court, this Court concludes that Nelson and plaintiff, as an officer and owner of Ballardini Ranch, had an aligned interest in obtaining documents related to the attempted acquisition of the Ballardini Ranch property, and that plaintiff had notice of Nelson's FOIA action. However, there is nothing in the record to suggest that Nelson made his FOIA request or instituted the FOIA action on behalf of or in his fiduciary role as an officer of Evans Creek, or on behalf of plaintiff. The undisputed evidence is that Nelson made a FOIA request in his

individual capacity, as did plaintiff.  Further, no evidence was presented to establish that plaintiff sought to control or did control Nelson's decisions in connection with Nelson's FOIA request and subsequent legal action, nor is there any evidence before this Court that the Colorado court took any precautions to protect plaintiff's interests.  <u>See</u> Friedman Decl., Ex. 3 (Recommendation of United States Magistrate Judge and District Judge's Order Accepting Magistrate Judge's Recommendation).  Lacking any basis for finding that Nelson was acting in a representative capacity for plaintiff in the District of Colorado litigation, the Court concludes that defendants are not entitled to summary judgment based on the doctrines of res judicata or collateral estoppel.

### C.   <u>The Applicability of *Stare Decisis*</u>

Defendant argued that the doctrine of <u>stare</u> <u>decisis</u> permits the Government to withhold the records that the Colorado court has already concluded were exempt from disclosure in Nelson's FOIA action.  <u>See</u> Defs.' Opp. Mem. at p. 5.  This argument is without merit.   While a decision of a district court in a different district may be considered persuasive authority, this Court is not bound by such a decision under the doctrine of <u>stare</u> <u>decisis</u> to reach the same decision as the court made in the Colorado litigation.  <u>See</u> <u>MONY Life Ins. Co. v. Ericson</u>, 533 F. Supp.2d 921, 926-27 (D. Minn. 2008) (concluding that it was not obligated under the doctrine of <u>stare</u> <u>decisis</u> to reach the same conclusion on a claim addressed by another district court) (citations omitted); <u>see</u> <u>also</u> <u>THK America, Inc. v. NSK, Ltd.</u>, 157 F.R.D. 651, 656-57 (N.D. Ill. 1994) (citing <u>Colby v. J.C. Penney Co., Inc.</u>, 811 F.2d 1119, 1123-24 (7th Cir. 1987)) ("While it is true that a decision of a district court in a different district may be considered as a

persuasive authority, the court is not bound by such decision under the doctrine of <u>stare decisis</u>.").

That is not to say that this Court would not or has not considered the decision in the Nelson FOIA action.  To the contrary, it has studied it carefully.  However, the doctrine of <u>stare decisis</u> does not require it to reach the same conclusions as the Colorado court.  Therefore, defendants are not entitled to summary judgment under the doctrine of <u>stare decisis</u>.

### D.  <u>Adequacy of Defendants' Search for Documents</u>[6]

The parties disagree on the thoroughness of defendants' search for documents in response to plaintiff's FOIA request.  "The adequacy of an agency's search for requested documents is judged by a standard of reasonableness, i.e., 'the agency must show beyond material doubt . . . that it has conducted a search reasonably calculated to uncover all relevant documents.'"  <u>Miller v. United States Dep't of State</u>, 779 F.2d 1378, 1383 (8th Cir. 1985) (quoting <u>Weisberg v. U.S. Department of Justice</u>, 705 F.2d 1344, 1351 (D.C. Cir. 1983)).  The "reasonable" search requirement does not mean that an agency's search for documents needs to be exhaustive.  <u>Miller</u>, 779 F.2d at 1383 (citation omitted).  "An agency may prove the reasonableness of its search through affidavits of responsible agency officials so long as the affidavits are relatively detailed,

---

[6]     Defendants argued that this Court cannot consider any assertion by plaintiff that their search was unreasonable because no such claim was pled in his Complaint [Docket No. 1].  <u>See</u> Reply Memorandum of Law in Support of Defendants' Amended Motion for Summary Judgment ("Defs.' Reply") at p. 10.  In his <u>pro se</u> Complaint, plaintiff requested that this Court declare that defendants' refusal to disclose all documents requested unlawful and he requested an order making the requested documents available to him.  Such pleading, while not explicitly stating what it was about defendants' conduct that was unlawful, was broad enough to encompass an assertion that defendants failed to produce requested records because they failed to conduct a reasonable search.

nonconclusory, and submitted in good faith." Id. (citing Goland v. Central Intelligence Agency, 607 F.2d 339, 352 (D.C. Cir. 1978), cert. denied, 445 U.S. 927 (1980)); see also Mace v. E.E.O.C., 197 F.3d 329, 330 (8th Cir. 1999) (concluding that the agency's affidavits stating that all identifiable, non-exempt documents were produced in response to the claimant's FOIA request was entitled to deference); Davis v. CIA, 711 F.2d 858, 860 (8th Cir. 1983) (per curiam) (citation omitted) (district court may forego discovery and award summary judgment based on relatively detailed, nonconclusory agency affidavits submitted in good faith).  "[O]nce the agency has shown by convincing evidence that its search was reasonable, i.e., that it was especially geared to recover the documents requested, then the burden is on the requester to rebut that evidence by a showing that the search was not in fact in good faith." Miller, 779 F.2d at 1383 (citation omitted).

In support of his contention that defendants' search for documents was not adequate, plaintiff asserted that their declarations were conclusory, as they failed to provide detail as to the files searched, the reasons the files searched were deemed to be the only ones reasonably likely to contain responsive materials, and the means used to employ the search. See Plaintiff's Memorandum in Opposition to Defendants' Motion for Summary Judgment ("Pl.'s Opp. Mem.") at p. 5. In addition, plaintiff claimed that the declarations revealed no meaningful search for eight out of the eleven categories of documents requested by him. Id.

### 1.    FOIA Request Topics 1, 2, 5-11—The Ballardini Ranch Documents

Plaintiff first asserted that defendants' search was inadequate because Brown, the coordinator for the BLM Nevada State Office who responded to his FOIA request,

treated the request as though it was limited solely to a request for documents pertaining to the nomination of the Ballardini Ranch for acquisition as environmentally sensitive land under Round 3 of the SNPLMA, thereby ignoring all but the first of his eleven requests for information under FOIA.  See Pl.'s Opp. Mem. at pp. 5-6.[7]

This Court finds that Brown's declarations in this case and in the Nelson case demonstrate that his search for documents responsive to items 1, 2, 5 – 11 were reasonable.  Brown's declaration in the present case sets forth that in conjunction with Nelson's FOIA request, he searched the Nevada BLM field offices located in Las Vegas and Carson City and also searched the BLM state office located in Reno, Nevada.  See Brown Decl., ¶ 3.  In addition, Brown incorporated the declaration he submitted in Nelson's FOIA action into his declaration for the present case.  See Brown Decl, ¶ 4, Ex. C.  In that declaration, Brown stated that the terms "Ballardini Ranch" and "Ballardini Ranch Acquisition" were used as general search terms to search for documents responsive to Nelson's FOIA request.  Id., ¶ 6.  As it pertained to plaintiff's requests, Brown stated that he again searched the two Nevada BLM field offices located in Las

---

[7]    As stated previously, items 1 and 2 sought documents concerning (1) the nomination of the Ballardini Ranch for acquisition under Round 3 of the SNPLMA program and/or subsequent withdrawal or termination of the Ballardini Ranch from Round 3; and (2) proposals for or consideration of acquisition for the Ballardini Ranch under later rounds of the SNPLMA program.  Items 5 through 11 sought documents, correspondence and emails concerning the Ballardini Ranch: (5) to or from Mike Dwyer, former project manager of the SNPLMA in the BLM Las Vegas, Nevada field office; (6) to and from Washoe County officials, representatives or staff (including Katy Singlaub (Washoe County Manager), Karen Mullen, Madelyn Shipman); (7) to or from Robert Abbey, former Director of the BLM's Nevada state office; (8) to or from John Singlaub, former Director of the BLM's Nevada field office; (9) to or from attorney Steven Walther; (10) to or from United States Senators Harry Reid, John Ensign, or their staff or representatives; and (11) to or from any elected officials, staff or representatives of Washoe County pertaining to settlement of claims with Evans Creek.

Vegas and Carson City and also searched the BLM state office located in Reno, Nevada.  Id., ¶ 5.  He asked these offices to determine "if there had been additional documents generated regarding the Ballardini Ranch beyond the documents that had earlier been provided to Mr. Nelson."  Id., ¶ 6.

The search for documents containing the terms "Ballardini Ranch" and "Ballardini Ranch Acquisition" in the Nelson FOIA search and the supplemental search conducted as to plaintiff's FOIA request, was sufficiently broad to capture all of the documents sought for by plaintiff under topics 1, 2, 5-11 of his FOIA requests, and therefore, this Court does not find that defendants' search to be unreasonable on this basis.

Second, plaintiff complained that with respect to item 1 of his FOIA request, relating to nomination of the Ballardini Ranch for acquisition, Brown: (1) did not explain why he did not ask the Washington D.C. office to conduct a search, considering that a search in response to Nelson's FOIA request netted 16 documents from the Washington D.C. office; and (2) failed to provide any information as to what files were searched, the means utilized to search them, who searched the files, what these individuals were instructed to search for, and the steps the individuals took to find "additional documents."  Id. at pp. 7-8.

It is true that in the Nelson FOIA action Brown had stated that he had searched for documents in the BLM office located in Washington D.C. (see Brown Decl., Ex. C, ¶ 5), and that his declaration in the present case makes no mention that the Washington D.C. office was searched again for documents pertaining to item 1.  Nevertheless, even if Brown did not search the BLM office located in Washington D.C. for documents responsive to item 1, his failure to do so does not render the BLM's search for

documents per se unreasonable, especially given that the SNPLMA program is administered by the Nevada State Office of the BLM located in Reno, Nevada.  See Friedman Supp. Decl., ¶ 3.  Stated otherwise, the search of Nevada State Office of the BLM, minus an additional search of the Washington D.C. office, does not equate to an unreasonable search when the entity most likely to have documents regarding the nomination of the Ballardini Ranch for acquisition under the SNPLMA is the Nevada State Office of the BLM.

Further, this Court rejects plaintiff's position that defendants failed to provide any information as to methodology of the search for documents responsive to item 1 of plaintiff's FOIA requests.  Brown specified that he searched the two Nevada BLM field offices located in Las Vegas and Carson City and the BLM state office located in Reno, Nevada.  See Brown Decl., ¶ 5.  He instructed these offices to search for documents relating to Ballardini Ranch that had not already been produced to Nelson.  Id.  By setting forth where they searched and what search terms were used, this Court finds that defendants provided sufficient detail as to their search methodology.  While plaintiff may find it helpful to know the identity of each person who conducted a search pursuant to Brown's instructions or the file cabinets or computers explored, the law does not require such detail in order for defendants to meet their burden of showing that they conducted a reasonable search for documents.

Third, as to items 2, 5, 7 and 8 of plaintiff's FOIA requests, plaintiff asserted that defendants failed to conduct any search for documents regarding the possible acquisition of the Ballardini Ranch in later rounds of the SNPLMA (responsive to item 2); and that no search was performed to obtain post-October 2003 emails and

correspondence of BLM employees Mike Dwyer (responsive to item 5), Robert Abbey (responsive to item 7), John Singlaub (responsive to item 8), and other unidentified persons administering the SNPLMA.  See Pl.'s Opp. Mem. at pp. 8-9.  The facts before this Court do not support this argument.  As stated previously, the relevant offices where Dwyer, Abbey and Singlaub were located were asked to search for documents involving the Ballardini Ranch.[8]  See Nielsen Aff., Ex. C (October 13, 2006 FOIA Request); see also Brown Decl., ¶ 5, Ex. C, ¶¶ 3, 4.

Further, the request for any documents related to the Ballardini Ranch would necessarily cover the acquisition of the Ballardini Ranch and any BLM employee communications pertaining to the Ballardini Ranch.  Further, this Court rejects plaintiff's assertion that defendants' search for documents responsive to items 5-11 of his FOIA request was inadequate because the search of the Nevada offices for emails and hard copy correspondence did not use the plaintiff's list of search terms: Ballardini, Washoe, K_____ Singlaub; Mullen, Shipman, Walther, Reid, Ensign, and Evans Creek.  See Pl.'s Opp. Mem. at p. 9.  Again, defendants' search for documents containing the search terms "Ballardini Ranch" was ample to encompass all of the documents sought by plaintiff via items 5-11 and therefore, this Court does not find defendants' search to be unreasonable on this basis.  Defendant has not provided this Court any authority, nor can this Court find any support for the proposition that a FOIA claimant can dictate the search terms to be used as the benchmark for determining whether an agency's search is reasonable.

---

[8]     Plaintiff in his clarifying letter dated October 13, 2006, stated that Dwyer was located in the Las Vegas Field Office; Abbey was located in the Nevada State Office in Reno, and Singlaub was located in the Carson City Field Office.  See Nielsen Aff., Ex. C.

Finally, this Court rejects plaintiff's argument that defendants failed to show that any search was conducted for documents relating or referring to the settlement between Washoe County and Evans Creek (responsive to item 11). See Pl.'s Opp. Mem. at p. 9. Plaintiff represented that part of the settlement between Washoe County and Evans Creek required that Washoe County no longer try to acquire Ballardini lands through eminent domain. See Nielsen Aff., ¶ 34. As such, the search for documents pertaining to the Ballardini Ranch constituted a search reasonably calculated to obtain settlement-related documents between Evans Creek, the owner of the Ballardini Ranch, and Washoe County.

### 2.    FOIA Request Topics 3 and 4 – White Pine Act Documents

Items 3 and 4 of plaintiff's FOIA request asked for documents regarding: the proposed funding or acquisition of portions of the Ballardini Ranch, or any other properties in Washoe County, under the White Pine Act; and any other federal or state legislation proposals to fund acquisition of Ballardini Ranch property. See Nielsen Aff., ¶ 2, Ex. A (September 21, 2006 FOIA Request). According to plaintiff, the shortcomings of defendants' search for documents pertaining to these items were as follows: (1) the search of the DOI's Washington, D.C., office only involved the files of the Legislative Affairs Group; (2) by August 15, 2007, the acquisition of the Ballardini Ranch had already moved up Round 8 of the SNPLMA and therefore, had defendants conducted a search of the Washington D.C., files on or after September 26, 2007, documents regarding the acquisition of up to 250 acres of the Ballardini Ranch would have been necessarily located; and (3) that the search for documents in the Nevada offices was too narrow. See Pl.'s Opp. Mem. at pp. 10-11.

a.   <u>Search of the DOI's Washington, D.C., Office</u>

Plaintiff first complained that the search of the DOI's Washington D.C., offices only involved the files of the Legislative Affairs Group citing to Supp. Friedman Aff., ¶ 10.  <u>See</u> Pl.'s Opp. Mem. at p. 10.  Plaintiff did not explain why only searching the Legislative Affairs Group's office in the Washington D.C. was deficient.

On May 9, 2007 and July 10, 2007, plaintiff was provided with a total of thirty-seven documents relating to the White Pine Act.  <u>See</u> Friedman Decl., ¶¶ 8-9; Nielsen Aff, ¶ 11, Exs. J (May 9, 2007 Letter from Friedman to Nielsen), K (July 10, 2007 Letter from Friedman to Nielsen).  These documents came from Gbneou's search of the Legislative Affairs Group's office prior to her departure from the BLM.  <u>See</u> Supp. Friedman Decl., ¶ 7.

When plaintiff challenged the adequacy of the search for the White Pine Act documents, on September 26, 2007, Friedman, Brown (the FOIA Coordinator for the BLM's Nevada office), Laura Bell (BLM FOIA Administrator), Craig Leff (BLM Acting Chief of the Legislative Affairs Group in Washington, D.C.), and Jane Freeman (BLM SNPLMA Coordinator) conferred to ascertain which offices were likely to possess documents responsive to plaintiff's FOIA request for White Pine Act Documents.  <u>See</u> Supp. Friedman Decl., ¶ 9.  As a consequence, members of the Legislative Affairs Group who had worked on the White Pine Legislation conducted a follow-up search of for emails, computer and paper files.  <u>Id.</u>, ¶ 10.  In addition, the following other sources were contacted and requested to search for responsive documents involving the White Pine legislation or any other legislation that pertained to the acquisition of the Ballardini Ranch or any other properties in Washoe County: Office of the Director, BLM; the Office

of the BLM State Director in Nevada; the FOIA Coordinator, Nevada State Office; the

BLM State Director in Nevada; the BLM Nevada Associate State Director; the Branch

Chief for the Division of Natural Resources, Lands, and Planning, Nevada State Office;

the Lands Team Lead for the Division of Natural Resources, Lands, and Planning,

Nevada State Office; the Special Legislation Project Manager for the Division of Natural

Resources, Lands, and Planning, Nevada State Office; and the Realty Specialist,

Division of Land Sales and Management, Las Vegas Field Office.  See Supp. Friedman

Aff., ¶ 10; Brown Decl., ¶ 7.

To the extent that plaintiff is claiming that defendants should have searched other

sources for responsive documents, this Court disagrees for two reasons.  First, the

undisputed evidence is that within the BLM,[9] it is the Legislative Affairs Group that has

the responsibility for proposed legislation and for coordinating among the affected

offices of the BLM in developing a position on legislation.  See Supp. Friedman Aff., ¶ 5.

Appropriately, defendants searched the offices of the Legislative Affairs Group.

Second, defendants went further – they searched for documents at various other BLM

offices and agencies that were likely to possess responsive documents.  The law does

not require a search to be exhaustive; it requires that it be reasonable.  See Miller, 779

F.2d at 1383 (finding that the "reasonable" search requirement does not mean that an

agency's search for documents needs to be exhaustive).  Here, the decision to search

the files of the Legislative Affairs Group, the group responsible for proposed legislation

and for developing the BLM's position on legislation, including the White Pine

---

[9]     In her affidavit, Friedman stated that Legislative Affairs Group was part of BLM,
not the DOI.  See Supp. Friedman Aff., ¶¶ 5, 9.

legislation, along with other BLM offices and other agencies that might have documents responsive to items 3 and 4, was reasonable.

                b.      Timeframe for Search for Documents Responsive to Items 3 and 4

Plaintiff next challenged the search of the Washington D.C. Legislative Affairs Group office by arguing that by August 15, 2007, which was prior to the September 26, 2007 search for documents, the acquisition of up to 250 acres of the Ballardini Ranch, authorized by the White Pine legislation, had already moved up to Round 8 of the SNPLMA.  See Pl.'s Opp. Mem. at p. 10.  Therefore, plaintiff submitted that had defendants conducted a reasonable search of the Washington, D.C. files, documents regarding the acquisition of up to 250 acres of the Ballardini Ranch would "necessarily" have been located.  Id.

In opposition, defendants maintained that plaintiff was not entitled to any documents responsive to items 3 and 4 that were generated after the White Pine Act was enacted into law on December 20, 2006, because plaintiff's FOIA requests, dated September 21, 2006 and October 13, 2006, predated the Act.  See Defs.' Reply at pp. 12-13.  According to defendants, an agency's obligation to search for responsive documents concluded as of the date of the request or on the date the agency began its search for records.  Id., at p. 13.

The governing DOI regulation provides that when responding to a FOIA request, the DOI will "include any records in its possession and control as of the date it begins its search." 43 C.F.R. § 2.21(a).  The search for items 3 and 4 was begun sometime after January 17, 2007, the date that plaintiff wrote to Gbneou at the direction of Brown requesting the documents responsive to items 3 and 4, and shortly after January 23,

2007, when Gbneou left.  See Nielsen Aff., ¶ 8, Ex. 6; Supp. Friedman Decl., ¶¶ 6, 7. Plaintiff is entitled to documents responsive to items 3 and 4 through the date of Gbneou's departure, which is after the date of the enactment of the White Pine Act. Thus, to the extent that defendants limited their search for documents responsive to items 3 and 4 to those documents generated sometime before October 13, 2006, the search was not reasonable.   Defendant shall be required to search for documents responsive to items 3 and 4 through the date of Gbneou's departure, and the search shall be directed to all sources previously contacted for responsive documents.[10]

c.     Search of the BLM Nevada Offices

According to plaintiff, defendants' declarations failed to identify the Nevada files searched and do not describe the means utilized for the searches regarding items 3 and 4 of defendant's FOIA requests.  See Pl.'s Opp. Mem. at p. 10.  Specifically, plaintiff asserted while the Friedman Supplemental Declaration states that the Nevada offices were instructed to search for documents involving the White Pine legislation relating to the Ballardini Ranch or other properties located in Washoe County, Brown's Declaration suggests that these offices only sought documents expressly referring to the Ballardini Ranch, thereby resulting in a narrowly construed and limited search for responsive documents.  Id. at pp. 10-11 (citing Supp. Friedman Decl., ¶ 10; Brown Decl., ¶ 7). Plaintiff maintained that this distinction is important because some of the SNPLMA-

---

[10]     The Legislative Affairs Group Office in Washington D.C.; Office of the Director, BLM; the Office of the BLM State Director in Nevada; the FOIA Coordinator, Nevada State Office; the BLM State Director in Nevada; the BLM Nevada Associate State Director; the Branch Chief for the Division of Natural Resources, Lands, and Planning, Nevada State Office; the Lands Team Lead for the Division of Natural Resources, Lands, and Planning, Nevada State Office; the Special Legislation Project Manager for the Division of Natural Resources, Lands, and Planning, Nevada State Office; and the Realty Specialist, Division of Land Sales and Management, Las Vegas Field Office.

related documents located on the BLM's website as of August 2007 provided information on the acquisition of Ballardini Ranch property without referring to the word "Ballardini." Indeed, the preliminary recommendation under Round 8 of the SNPLMA and a BLM document listing Round 8 approved project expenditures refer to an "Acquisition of Land for Washoe County Regional Park & Open Space",[11] without making any reference to the Ballardini Ranch. See Supplemental Affidavit of Robert L. Demay in Opposition to Defendants' Motion for Summary Judgment and in Support of Plaintiff's Motion for *In Camera* Review of Documents Withheld and Redacted on Claims of Deliberative Privilege, and for Summary Judgment, Exs. B, p. 10 of 19 (Appendix to the BLM's Round 8 Preliminary Recommendation for Expenditures under the SNPLMA); C (List of Round 8 Approved Project Expenditures from the BLM Website).

The defendants' supporting declarations state that two individuals conducted a search of the Nevada state offices. First, Freidman's Supplemental Declaration provides that Bell, BLM FOIA Administrator, contacted the Office of the Director, BLM, the Office of the BLM State Director in Nevada, and the FOIA Coordinator, Nevada State Office, and requested that they search for responsive documents involving the White Pine legislation or any other legislation that pertained to the acquisition of the Ballardini Ranch or any other properties in Washoe County. See Supp. Friedman Decl., ¶ 10. Second, Brown sought documents pertaining the White Pine legislation and Ballardini Ranch from of the following: the BLM State Director in Nevada; the BLM Nevada Associate State Director; the Branch Chief for the Division of Natural

---

[11]    The Court observes that these were the only projects requested by Washoe County that were listed in these documents.

Resources, Lands, and Planning, Nevada State Office; the Lands Team Lead for the Division of Natural Resources, Lands, and Planning, Nevada State Office; the Special Legislation Project Manager for the Division of Natural Resources, Lands, and Planning, Nevada State Office; and the Realty Specialist, Division of Land Sales and Management, Las Vegas Field Office.  See Brown Decl., ¶ 7.  Taken together, these declarations establish the search of the Nevada state offices was not limited solely to the Ballardini Ranch, but included a search for documents pertaining to the acquisition of properties in Washoe County under the White Pine Act or any other legislation.

As such, this Court finds that defendants' detailed declarations support a finding that defendants' search for documents in the state offices for documents pertaining to items 3 and 4 of plaintiff's FOIA request was reasonable, except to the extent that defendants limited their search for responsive documents to documents generated before October 13, 2006.

### 3.      Burden of Showing that Searches Were Not in Good Faith

In light of this Court's finding that defendants' search for documents responsive to plaintiff's FOIA requests was reasonable, except to the extent that they limited their search for the White Pine Act Documents to documents generated before October 13, 2006, the burden shifts to plaintiff to rebut that evidence by a showing that the search was in fact not in good faith.  See Miller, 779 F.2d at 1383 (citation omitted).  Plaintiff did not meet that burden.  While plaintiff argued that more responsive documents must exist within the BLM and DOI, (e.g., Pl.'s Opp. Mem. at pp. 10-11), plaintiff has no made no such showing.  See SafeCard Services, Inc. v. SEC, 926 F.2d 1197, 1201 (D.C. Cir. 1991) (speculative claims about existence of other documents cannot rebut

presumption of good faith afforded agency affidavits) (citations omitted).   Thus, this Court will only recommend that defendants be ordered to conduct a search for and produce documents responsive to items 3 and 4 (or an index of those responsive documents they have withheld or redacted) that were generated between October 13, 2006 and the date of Gbneou's departure from BLM.

### E.     Did the Defendants Properly Invoke FOIA Exemption 5 of FOIA—the "Deliberative Process" Privilege

A court must review an agency denial of a FOIA request de novo.  5 U.S.C. § 552(a)(4)(B).   An agency has the burden to sustain the denial of a FOIA request.   5 U.S.C. § 552(a)(4)(B).   "An agency may meet its burden by 'submitting affidavits and other evidence to the court to show that the documents are properly classified and thus clearly exempt from disclosure.'"   Gavin v. U.S. S.E.C., Civil No. 04-4522 (PAM/JSM), 2007 WL 2454156 at *2 (D. Minn. Aug. 23, 2007) (quoting Hayden v. Nat'l Security Agency, 608 F.2d 1381, 1386 (D.C. Cir. 1979)).   The Eighth Circuit has stated that the primary role of a court examining the denial of a FOIA request Court is to:

> [R]eview the adequacy of the affidavits and other evidence presented by the Government in support of its position * * *. If the Government fairly describes the content of the material withheld and adequately states its grounds for nondisclosure, and if those grounds are reasonable and consistent with the applicable law, the district court should uphold the Government's position. The court is entitled to accept the credibility of the affidavits, so long as it has no reason to question the good faith of the agency.

Barney v. IRS, 618 F.2d 1268, 1272 (8th Cir. 1980) (quoting Cox v. United States Department of Justice, 576 F.2d 1302, 1312 (8th Cir. 1978) (noting that the "federal courts and federal judges are ill-suited to assume the role of super-administrator in FOIA cases.")).   A court may exercise this duty by evaluating "the propriety of the

claimed exemptions on the record before it, it may order the agency to submit more detailed affidavits or a Vaughn index, or review documents in camera." Gavin, 2007 WL 2454156 at *3 (citing Barney, 618 F.2d at 1272).   A Vaughn "index usually consists of a listing of each withheld document, or portion thereof, indicating the specific FOIA exemption applicable and the specific agency justification for the non-disclosure." Miccosukee Tribe of Indians of Florida v. U.S., 516 F.3d 1235, 1260 (11th Cir. 2008) (citing Vaughn v. Rosen, 484 F.2d 820, 827 (D.C. Cir. 1973)).

In this case, defendants have relied on two Vaughn indexes to establish the propriety of their withholding of information under the deliberative process privilege for both the Ballardini Ranch Documents and the White Pine Act Documents.  See Defs.' Mem. at pp. 22, 25 (citing Friedman Decl., ¶¶ 6, 8 and 9).

Plaintiff argued that defendants' Vaughn indexes are insufficient to demonstrate the applicability of the exemption against production under the deliberative process privilege.  See Memorandum in Support of Motion for In Camera Review of Documents Withheld and Redacted on Claims of Deliberative Privilege and for Summary Judgment ("Pl.'s Mem.") at p. 16.  FOIA Exemption 5 allows agencies to refuse to produce "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency."  5 U.S.C. § 552(b)(5).  Under Exemption 5, "memorandums or letters" are protected from disclosure by several privileges, including the deliberative process privilege.  See Judicial Watch, Inc. v. Food & Drug Admin., 449 F.3d 141, 151 (D.C. Cir. 2006) (citation omitted).  "The purpose of the deliberative process privilege is to allow agencies freely to explore alternative avenues of action and to engage in internal debates without fear of public scrutiny."

<u>Missouri ex rel. Shorr v. U.S. Army Corps of Eng'rs</u>, 147 F.3d 708, 710 (8th Cir. 1998) (citation omitted).   "The deliberative process privilege protects agency documents that are both predecisional and deliberative."  <u>Judicial Watch, Inc.</u>, 449 F.3d at 151; <u>see</u> <u>also</u> <u>Missouri ex rel. Shorr</u>, 147 F.3d at 710 (finding that an agency is not required to produce an inter- or intra-agency memorandum that is both pre-decisional and deliberative).  According to the Eighth Circuit:

> A <u>predecisional</u> document is one which is designed to assist agency decisionmakers in arriving at their decisions and which contains the personal opinions of the writer rather than the policy of the agency. A document is <u>deliberative</u> if its disclosure would expose the agency's decisionmaking process in a way that would discourage candid discussion and thus undermine the agency's ability to perform its functions; the focus is on whether the document is part of the agency's deliberative process.

<u>Missouri ex rel. Shorr</u>, 147 F.3d at 710 (citation omitted) (emphasis added).

### 1.    Ballardini Ranch Documents

As stated previously, the deliberative process privilege asserted by the BLM on January 9, 2007, with regards to the Ballardini Ranch Documents, was addressed by the Harris <u>Vaughn</u> index issued pursuant to the March 31, 2005 Declaration of Donald Harris ("Harris Decl."), and submitted in opposition to Nelson's FOIA action.   <u>See</u> Friedman Decl., ¶¶ 4, 6, Ex. 2 ("Harris Decl.").  The Harris Declaration and his <u>Vaughn</u> index in the Colorado litigation were relied upon in this case by defendants because the Ballardini Ranch Documents withheld or redacted in this case were the same as those redacted or withheld in the Nelson litigation.  <u>Id.</u>, ¶ 6.  As such, this Court has examined the Harris <u>Vaughn</u> index to the extent that plaintiff disputes the deliberative process privilege asserted with regards to the Ballardini Ranch Documents.

Plaintiff has challenged the BLM's assertion of the deliberative process privilege as to Documents 1 through 5 listed in Harris <u>Vaughn</u> index.  The Court will now address the applicability of the deliberative process privilege as to each of these documents.

a.   Redacted "Document 1"

According to the Harris <u>Vaughn</u> index, "Document 1" is an email dated August 13, 2003 from Libby Aberant (Lead Realty Specialist of SNPLMA Acquisitions) to Meg Jensen (Deputy State Director, BLM Nevada state Office Lands and Realty Staff, member of SNPLMA Working Group); it was copied to a number of BLM and Forest Service officials.  <u>See</u> Harris Decl., ¶ 10; <u>see also</u> Brown Decl. Ex. D, Declaration of Mervin G. Boyd, ¶ 12. The email forwarded an article from the Reno Gazette regarding the Ballardini Ranch, which according to the email, falsely implied that the SNPLMA funds could be used to purchase property through condemnation procedures implemented by Washoe County.  <u>Id.</u>, ¶ 11; <u>see also</u> Appendix in Support of Motion for In Camera Review of Documents Withheld and Redacted on Claims of Deliberative Privilege and for Summary Judgment ("Appendix"), Doc. 1 (Redacted August 13, 2003 email).  The Harris <u>Vaughn</u> index stated that the single redacted paragraph in the August 13, 2003 email contained the author's views "regarding the situation with the SNPLMA program in general, and recommends actions the BLM should take to clarify to the public the issues raised in the article."  <u>Id.</u>, ¶ 12.  The basis for withholding the redacted paragraph was that it contained the author's assessment of the situation posed by the article and what actions the BLM should take in response to the article; it was predecisional because it predated any actions taken by the BLM on this issue; and

was deliberative because it was part of an overall dialogue among BLM personnel regarding the Ballardini Ranch.  Id., ¶ 14.

The Forest Service provided Nelson a copy of this email in an unredacted format. See Nelson, Aff., ¶ 8 Ex. B (Unredacted August 13, 2003 email); see also Appendix, Doc. 1A (same).  The unredacted portion of the email was follows:

> **CONCERN:**  The SNPLMA law requires a willing seller.  The article could be potentially damaging to the credibility of the SNPLMA program with land owners since it gives a false impression regarding condemnation of property for purchase through SNPLMA.  If the article is accurate, it's probably important that someone address this issue with Washoe County so that they don't risk effectively preventing the FS from acquiring the property with SNPLMA funds by condemning the property.  Bob may also want BLM to make some formal comment to clarify the issue.

Id. (emphasis in original).

Plaintiff argued that the deliberative process privilege asserted by defendants to this document was waived because the Forest Service produced the document to Nelson through a separate FOIA request.  See Pl.'s Mem. at p. 19.  An agency's assertion that a document is protected from disclosure by the deliberative process privilege under Exemption 5 of FOIA has less credibility if it has already disclosed the document to a third party.  See United States v. Metropolitan St. Louis Sewer Dist. (MSD), 952 F.2d 1040, 1045 (8th Cir. 1992).  Indeed, disclosure of a document to one individual may serve as a waiver by an agency of the privilege when it attempts to assert it against another individual seeking the same document.  Id.  Waiver is fact specific inquiring that takes into account "(1) the originating party of each document requested; (2) the parties provided access to each document; (3) the party responsible

for the release of each document to third parties; and (4) the voluntariness (or lack thereof) of the release." Id. at 1045 n. 2.

This Court will not construe the release of the August 13, 2003 unredacted email by the Forest Service as waiver of the deliberative process privilege by the BLM, considering that it was not the BLM that released the document to Nelson.   To the contrary, the BLM asserted the privilege against Nelson.   See Harris Decl., ¶ 14.   As plaintiff already has a copy of the unredacted copy, he does not appear to be requesting that it be reproduced to him by defendants.   See generally, Urban v. United States, 72 F.3d 94, 95 (8th Cir. 1995) (citation omitted) (finding that in FOIA cases, mootness occurs when requested documents have already been produced).   Instead, the real thrust of plaintiff's argument is that because defendants redacted a portion of the email that plaintiff asserts was not predecisional or deliberative, all further invocations by defendants of the deliberative process privilege are suspect, and therefore, this Court should conduct an in camera inspection of all withheld or redacted documents.   See Pl.'s Mem. at p. 20.   Specifically, plaintiff claimed that the question of how to respond to a news article is not the type of "personal opinion" directed a "type of policy decision" to which the deliberative process privilege attaches.   Id. at pp. 20-21.

The deliberative process privilege covers "'documents reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated,' and 'rests on the obvious realization that officials will not communicate candidly among themselves if each remark is a potential item of discovery and front page news, and its object is to enhance 'the quality of agency decisions,' by protecting open and frank discussion among those who

make them within the Government." Department of Interior v. Klamath Water Users Protective Ass'n, 532 U.S. 1, 8-9 (2001) (quoting NLRB v. Sears, Roebuck & Co., 421 U.S. 132, 151 (1975)) (citations omitted); see also Skorr, 147 F.3d at 710 (the Eighth Circuit concluding that a document is deliberative "if its disclosure would expose the agency's decisionmaking process in a way that would discourage candid discussion and thus undermine the agency's ability to perform its functions.").

The perceived reaction to a newspaper article regarding SNPLMA funding of a Washoe County's condemnation of the Ballardini and how to deal with the implications of the article and its subject matter satisfies both the deliberative and predecisional requirements of Exemption 5. The email is predecisional because it contains the opinion of the author on how allowing Washoe County and the public to have misconceptions of the SNPLMA program could impede the Forest Service's ability to acquire the Ballardini Ranch via the SNPLMA and an opinion on how to remedy the situation. See Renegotiation Bd. v. Grumman Aircraft Eng'g Corp., 421 U.S. 168, 184 (1975) (finding that predecisional if it was 'prepared in order to assist an agency decisionmaker in arriving at his decision.'"). It is deliberative because it reflects the consultative process among agency employees on how to protect the ability of an agency to acquire a piece of property under SNPLMA and on how to deal with the media's portrayal of its policies as exemplified by the SNPLMA program. Furthermore, the article is deliberative because disclosing agency communications regarding how to deal with a policy decision based on media reports would impede candid discussion and thus undermine the agency's ability to perform its functions based on a fear that the discussion could wind up in the media again. As such, this Court finds that the

deliberative process privilege applies to "Document 1" and therefore, defendants' redaction of this document does not provide a sufficient basis for the Court to conduct an <u>in camera</u> inspection of the other documents defendants have claimed are protected by the privilege.[12]

b.  <u>Redacted "Document 2"</u>

"Document 2" is an email string consisting of 12 emails pertaining to the Ballardini Ranch, all of which were withheld, except for the tenth email.  <u>See</u> Harris Decl., ¶ 16.  According to Harris, the first email, dated August 13, 2003 at 4:19 p.m., with the subject of "Ballardini Ranch", was from Libby Aberant (Lead Realty Specialist of SNPLMA Acquisitions) to Steven Dodds (Acting Lead for Forest Service Region 4 Land Adjustment Team), Steve Kluge (Realty Specialist, Humboldt-Toiyabe National Forest) and Stephanie Phillips (Deputy Forest Service Supervisor, Humboldt-Toiyabe National Forest).  <u>Id.</u>, ¶ 17; <u>see also</u> Brown Decl. Ex. D, Declaration of Mervin G. Boyd, ¶ 12.[13] The author discussed the implications of Washoe County's possible condemnation of the Ballardini Ranch, stated that this was a Forest Service acquisition and not a BLM acquisition, and set forth why the Forest Service should be concerned about purchasing the Ballardini Ranch using SNPLMA proceeds.  <u>Id.</u>, ¶ 17.

---

[12]    This Court notes that even if it had found that the email was not protected by the deliberative process privilege, it would not have automatically required an <u>in camera</u> inspection of all of the other redacted or withheld documents given that the determination of whether disclosure would reveal an agency's deliberative process "is a fact-based inquiry . . ."  <u>Assembly of California</u>, 968 F.2d at 919.

[13]    Any further references to the titles of BLM or Forest Service employees found in this Report and Recommendation are derived from Paragraph 12 of the Boyd Declaration.

The second email dated August 13, 2003 at 3:41 p.m., with the subject of "Ballardini Ranch", was from Aberant to John Singlaub (BLM Carson City Manager) and Jo Simpson (Chief of BLM Nevada Office of Communications).  <u>Id.</u>, ¶ 18.  The email discussed whether a federal agency could purchase property with SNPLMA funds after it had been acquired by a state entity through condemnation and also inquired into what sort of public reaction a federal agency could face were it to engage in such an acquisition.  <u>Id.</u>

The third email dated August 14, 2003 at 8:25 a.m., with the subject of "Ballardini Ranch", was from Aberant to Kluge, Dodds and Phillips at the Forestry Service.  <u>Id.</u>, ¶ 19.  Aberant pointed out the importance of federal agencies avoiding actions that could be seen as encouraging a condemnation action against the Ballardini Ranch.  <u>Id.</u>

The fourth email dated August 13, 2003 at 4:09 p.m., with the subject of "Ballardini Ranch", was from Singlaub to Aberant and Simpson at the BLM.  <u>Id.</u>, ¶ 20.  The email contains Singlaub's views on the cost of acquiring the Ballardini Ranch and his recommendation as to how the BLM should proceed during the acquisition process.  <u>Id.</u>

The fifth email is dated August 25, 2003, at 2:29 p.m., with the subject "Ballardini Ranch Termination Letter", from Jim Stobaugh (BLM Nevada Program Lead for Lands) to Aberant, Angie Lara (Associate Field Manager, BLM Las Vegas Office), Bob Abbey (State Director, BLM Nevada), Simpson and Mark Morse (BLM Las Vegas Field Manager).  <u>Id.</u>, ¶ 21.  This email acknowledged a proposed change by Stobaugh in a letter announcing the termination of the federal acquisition of the Ballardini Ranch and

proposed a new sentence to be added to the letter after the proposed change was made. Id.

The sixth email is dated August 25, 2003, at 1:29 p.m., from Stobaugh to Aberant, Lara, Abbey, Simpson and Morse, with the subject "Ballardini Ranch Termination Letter." Id., ¶ 22. The email contained Stobaugh's suggested change to a letter announcing the termination of the federal acquisition of the Ballardini Ranch. Id.

The seventh email is dated August 25, 2003, at 11:40 a.m., from Aberant to Abbey, with the subject "Ballardini Ranch Termination Letter." Id., ¶ 23. It was copied to Simpson, Stobaugh, Morse and Lara at the BLM. Id. The email Aberant forwarded the draft termination letter to the State Director for review, and provided to the Director her suggestions for addressing several issues in the letter. Id.

The eighth email is dated August 28, 2003, at 9:03 a.m., from Stobaugh to Meg Jensen (Deputy State Director, BLM Nevada State Office Lands and Realty Staff), with the subject "Ballardini Ranch—Washoe County Letter Dated 8/27/03." Id., ¶ 24. The email contained Stobaugh's opinions on how the BLM State Director should respond to the Washoe County's letter dated August 27, 2003 regarding the acquisition of the Ballardini Ranch. Id.

The ninth email is dated August 27, 2003, at 4:49 p.m., from Stobaugh to Aberant and was copied to numerous BLM employees including Director Abbey, with the subject "Ballardini Ranch—Washoe County Letter Dated 8/27/03." Id., ¶ 25. The email contained Stobaugh's suggestions on ways of checking to ensure the BLM was not aware of the termination notice for the Ballardini Ranch prior to the date Secretary Norton received the August 19, 2003 letter from the owner of the Ballardini Ranch and

provided the author's recommendation as to the next steps the BLM should take regarding Washoe County's August 27, 2003 letter.  Id.

The tenth email is dated August 27, 2003, at 12:21 p.m. between BLM officials, and was produced to Nelson.  Id., ¶ 26.

The eleventh email is a copy of the ninth email and the twelfth email is a copy of the tenth email produced to Nelson.  Id., ¶¶ 27, 28.

According to the Harris Vaughn index, the basis for withholding the emails was that they contain a series of discussions among BLM employees and to their superiors, "on difficult issues related to the Ballardini Ranch."  Id., ¶ 30.  In addition, the comments in the emails consist of the authors' frank views and recommendations related to the issues surrounding the Ranch.  Id.  Accordingly, defendants asserted that under the deliberative process privilege the emails were predecisional since they predated various actions related to the Ballardini Ranch, including the BLM's final formulation of its public statements regarding its efforts to acquire the Ballardini Ranch.  Id., ¶ 30.  In addition, the email chain was deliberative, as it was part of the overall dialogue among BLM personnel regarding how to deal with the public following the newspaper article regarding the Ballardini Ranch, Ballardini Ranch owners' notice to the BLM that the property was not for sale, and Washoe County's interest in acquiring the Ballardini Ranch.  Id.  Defendants' position was that the release of these materials would have a chilling effect upon frank communications between agency employees at the BLM and the Forest Service.  Id.

Plaintiff argued that this email chain is not entitled to protection under the deliberative process privilege because: (1) defendants did not identify the specific

decision which each of these emails preceded and supported; (2) the emails did not identify a decisionmaker; and (3) the description of the emails did not suggest that they contain drafts, proposals, opinions, or advice that would be indicative of a pending policy decision.  See Pl.'s Mem. at p. 23.  This Court finds these arguments to be without merit.  First, the emails involve the policy-related and decisionmaking process of how to proceed with the purchase of the Ballardini Ranch using SNLPMA proceeds and how to address the possible public perception that would flow from the BLM's and the Forest Service's actions in this regard.  See Access Reports v. Department of Justice, 926 F.2d 1192, 1196 (D.C. Cir. 1991) (citing Sears, 421 U.S. at 151 n. 18) (finding that an agency need not identify "a single, discrete decision," since not all processes result in final agency decisions, but must at least identify a specific decisionmaking process).  While plaintiff suggested that a policy decision involving circumventing federal law by offering a county money to pay for a condemnation could not be part of the deliberative process, (see Pl.'s Mem. at pp. 23-24), nothing prohibits an agency from contemplating different courses of policy action involving an interpretation of law.  See Missouri ex rel. Shorr, 147 F.3d at 710 ("the deliberative process privilege is to allow agencies freely to explore alternative avenues of action and to engage in internal debates without fear of public scrutiny.") (emphasis added).

Second, it is clear from defendants' description that the BLM and Forest Service were engaged in a process leading up to a variety of decisions, including how to address the public after certain events related the Ballardini Ranch had occurred.  The fact that the ultimate decisionmaker of any of these decisions was not identified does not lead this Court to find that no decision or final action was going to occur.

Third, contrary to plaintiff's assertion, the Harris <u>Vaughn</u> index specifically sets forth opinions and recommendations of BLM officials regarding decisions that were to be made on how to proceed with the Ballardini Ranch acquisition, including whether to acquire the property, how to deal with Washoe County and how to communicate with public regarding the Ballardini Ranch.

In summary, this Court concludes that the declarations and the Harris <u>Vaughn</u> index sufficiently support a finding that emails were properly withheld on grounds that disclosure of the agencies' decisionmaking process would discourage candid discussion and undermine their ability to perform their functions.

c.      <u>"Document 3"</u>

"Document 3" is an email string consisting of three emails pertaining to the Ballardini Ranch.  <u>See</u> Harris Decl., ¶ 32.  One paragraph of the first email was redacted; the second email was released in its entirety; and the third email is the same as "Document 1".

The redacted email, dated August 13, 2003 at 4:55 p.m., with the subject of "Ballardini Ranch", was sent by Aberant to Simpson with a copy Morse, Lara, Stobaugh and Merv Boyd (Assistant Field Manager BLM Las Vegas for Land Sales and Acquisitions, responsible for the implementation of SNPLMA).  <u>Id.</u>  The redacted portion of this email opined about the ramifications of acquiring the Ballardini Ranch using SNPLMA funds from Washoe County, if the County first condemned the Ballardini Ranch.  <u>Id.</u>  The author then provided her recommendations as to what actions the BLM should take regarding the proposed acquisition.  <u>Id.</u>

According to the Harris <u>Vaughn</u> index, the redacted portion of the first email was withheld because it consisted of the author's frank assessment of the situation and her views on the actions BLM should take.  <u>Id.</u>, ¶ 36.  Defendants stated withheld portion was subject to the deliberative process privilege because it predated any action taken by the BLM regarding the Ballardini Ranch; it was deliberative because the comments of the author were a part of the overall dialogue with BLM personnel regarding the Ballardini Ranch.  <u>Id.</u>

Plaintiff argued that defendant failed to set forth the policy decision or the decisionmaker related to the redacted email.  <u>See</u> Pl.'s Mem. at p. 24.   In this regard, plaintiff asserted that whether an agency could buy condemned property did not bear on any policy consideration, as Washoe County had not condemned the Ballardini Ranch and the BLM had to honor Evans Creek's desire not to sell.  <u>Id.</u> at p. 25.  This Court finds otherwise.  The policy-related decisionmaking process addressed by the opinions set forth in the email were the implications of buying a condemned property with SNLPMA funds and what the BLM should do about a proposed acquisition of the Ballardini Ranch.   While plaintiff may believe that there was no policy involved or decision to make, the Harris <u>Vaughn</u> index makes it clear that the BLM had not made a final decision on how to proceed with Ballardini Ranch in light of Washoe County's potential action, and therefore, the deliberative process privilege was properly invoked to protect the agency's ability to freely to explore alternative avenues of action without fear of public scrutiny.

d.    "Document 4"

"Document 4" is an email string consisting of three emails pertaining to the Ballardini Ranch. See Harris Decl., ¶ 37.  The first email, dated August 18, 2003 at 6:48 p.m., with the subject of "SNPLMA Rnd 3 Acquisition—Ballardini Ranch in Reno Gazette", was sent by Robert Vaught (Forest Supervisor) at the United States Forest Service to Abbey at BLM, with a copy being sent to Aberant at BLM and Phillips at the Forest Service. Id. ¶ 38.  In this email, Vaught expressed his view as to the conditions necessary for the Ballardini Ranch acquisition to go forward, he opined about the political landscape surrounding the acquisition of the Ranch, and he informed the recipients what "his future actions would be regarding the Ballardini Ranch." Id.  The redacted portion was deemed predecisional by defendants because the concerns, views and recommendations expressed by Vaught predated any decisions by the BLM or the Forest Service regarding the Ballardini Ranch.  The document was withheld under the deliberative process privilege because it contained Vaught's "views" and "recommendations" provided to the BLM as part of the deliberations that were taking place on how to respond to and resolve issues related to the Ballardini Ranch. Id., ¶ 42.

The second email dated August 18, 2003 at 2:14 p.m. from Abbey to Vaught, which was released in its entirety to Nelson (plaintiff has a copy of this document), preceded the first email from Vaught to Abbey. Id., ¶ 39; Appendix, Doc. 4.  This email stated:

> See note below.  In think this is a good reminder from Libby Aberant regarding the use of SNPLMA funds for land acquisitions.  I am not sure what strategy Washoe County might be pursuing but you might what to inform the county folks you might be working with on the Ballardini Ranch that

> SNPLMA funds can only be used to acquire lands or interest
> in lands from willing sellers.

Appendix, Doc. 4.

The third email dated August 13, 2003 at 11:28 a.m. is Document 1, discussed above. Id.

Plaintiff argued that the first email should be produced in its entirety because it is not predecisional, in that Vaught informed Abbey what his actions would be regarding the Ballardini Ranch. See Pl.'s Mem. at p. 26. In other words, plaintiff maintained that the email set forth the final decision by the Forest Service; as such, it cannot be predecisional. This Court disagrees. The Harris Vaughn index stated that Vaught at the Forest Service was providing his recommendations to Abbey at the BLM on the Ballardini Ranch, which is consistent with Vaught stating what he would do with regards to the Ballardini Ranch. This inter-agency back and forth on the policy decisions related to the Ballardini Ranch is the type of communications that the deliberative process privilege was meant to protect. See generally, Dow Jones & Co. v. Dep't of Justice, 917 F.2d 571, 573 (D.C. Cir. 1990) (quoting Wolfe v. Department of Health and Human Servs., 839 F.2d 768, 773 (D.C. Cir. 1988) (en banc)) (finding that the deliberative process privilege is "'predicated on the recognition that the quality of administrative decision-making would be seriously undermined if agencies were forced to operate in a fish bowl.'").

### e.    "Document 5"

"Document 5" is an email string consisting of 5 emails pertaining to the letter from the owners of Ballardini Ranch to Secretary Norton. See Harris Decl., ¶¶ 43-44. The first email, is dated August 22, 2003 at 12:57 p.m., with the subject of "Ballardini—Letter

from Owners to Secretary Norton." Id., ¶¶ 44-48.  It is from Stobaugh to Abbey and Jenson, and is copied to Simpson and Aberant, all of BLM.  Id., ¶ 44.  In it, Stobaugh discussed his observations regarding the relationship between the BLM and Washoe County in SNPLMA acquisition matters, and he provided his recommendations on how the BLM should work with the County in SNPLMA acquisition matters in light of the difficulties that had surfaced in the connection with acquiring the Ballardini Ranch.  Id.

The second email, dated August 22, 2003, at 12:57 p.m., is from Aberant to Vaught and is copied to Kluge, Phillips and Dodds at the Forest Service, and Boyd, Stobaugh, Morse and Lara at BLM.  Id., ¶ 45.  The subject of the email is "Ballardini— Letter from Owners to Secretary Norton." Id.  It was released in full to Nelson.  Id.

The third email is Document 4; the fourth email was the August 18, 2003 email sent at 2:14 p.m. from Abbey to Vaught, which was discussed above in connection with Document 3 (plaintiff has a copy); and the fifth email is Document 1.

Defendants stated that the basis for withholding the first email was that it contains the author's frank and candid observations regarding the relationship the BLM has with Washoe County in SNPLMA acquisitions and contains the author's recommendation on how the BLM should work with the County in light of the difficulties that surfaced in the context of acquiring the Ballardini Ranch.  See Harris Decl., ¶ 50.

Plaintiff argued that email fails to identify a decisionmaker and fails to provide how a decision implicated a new agency policy given that the recommendation on how to work with the Washoe County in the future with regards to land acquisitions does not relate to a policy decision.  See Pl.'s Mem. at pp. 26-27.  However, the deliberative process privilege is not so limited.  As previously discussed, no ultimate decision need

be identified in order to invoke the privilege.  Further, the privilege is not limited to the develop of new policies as suggested by plaintiff.  Rather, it allows the government to withhold from disclosure documents reflecting "advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions <u>and</u> policies are formulated."   <u>In re Sealed Case</u>, 121 F.3d 729, 737 (D.C. Cir. 1997) (emphasis added) (citations omitted); <u>see</u> <u>also</u> <u>Klamath</u>, 532 U.S. at 8 (citation omitted) (finding that the deliberative process privilege protects from disclosure "documents reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions <u>and</u> policies are formulated.") (emphasis added).

Here, while a policy may not be implicated, Stobaugh's opinions on the relationship of the BLM with the County and his recommendations on how to deal with County on a going-forward basis, given the problems encountered with the Ballardini Ranch acquisition, reflect an ongoing decisionmaking process.  If the BLM's "frank" comments about Washoe County and its officials and its opinions on how to deal with the County were made public, irreparable harm to the agency as it considered any future land acquisitions under SNPLMA could result.  Further, disclosure of such communications would discourage future candid intra-agency discussions, all of which would undermine the agency's ability to perform its functions.

In addition, plaintiff complained that defendants should not be allowed to redact the name of the authors, the email addresses and the dates of the various emails.  However, the Harris <u>Vaughn</u> index set forth the date and time of the emails, the name of the author and the recipients.  The Court is entitled to accept the credibility of the

affidavits setting forth the <u>Vaughn</u> indexes, so long as it is given no reason to question the good faith of the agency.  <u>See</u> <u>Cox</u>, 576 F.2d at 1312 (citation omitted) (finding that court is entitled to accept the credibility of the affidavits setting forth the <u>Vaughn</u> Indexes, so long as it has no reason to question the good faith of the agency).  Plaintiff provided no evidence of bad faith to suggest that the <u>Vaughn</u> index within Harris's Declaration was withholding information or providing false information.

### 2.      White Pine Documents

There are three categories of documents that have been withheld on the basis of the deliberative process privilege with regards to the White Pine Act.  The first category of documents are drafts captioned "Draft Statement of Chad Calvert, Deputy Assistant Secretary for Land and Minerals Management, U.S. Department of Interior, Senate Energy and Natural Resources Committee, Subcommittee on Public Lands and Forests, S.3722, White Pine County Conservation, Recreation and Development Act of 2006" ("Calvert Draft Statements").  <u>See</u> Friedman Decl., ¶ 9A.  The second category of documents are drafts captioned "Section VII, Eastern Nevada Landscape Restoration Project and Section VIII, Amendments to the Southern Nevada Public Land Management Act of 1998", which are the Administration's position statements on the Senate bill for the White Pine Act (hereafter referred to as "Draft Position Statements").  <u>Id.</u>, ¶ 9B.  The third category of withheld documents are captioned "BLM Nevada State Office, Report on Titles VII and VII [sic], S.3722, White Pine County Conservation, Recreation and Development Act of 2006, which consists of the BLM's comments on the Senate bill for the White Pine Act for use in developing the department and

Administration's position on the White Pine legislation (hereafter referred to as "BLM Comments").  Id., ¶ 9C.

Plaintiff conceded that "drafts such as these White Pine documents are predecisonal, such that deliberative content is properly redacted. . . ."  See Pl.'s Mem. at p. 29.  However, plaintiff argued that based on the face of the redacted documents provided to him, there is a question whether all reasonably segregable non-deliberative material have been produced.  See Pl.'s Mem. at p. 27.

In complying with its duties under FOIA, an agency must disclose "[a]ny reasonably segregable portion of a record . . . after deletion of the portions which are exempt. . . ."  5 U.S.C. § 552(b).  "[E]ven if some materials from the requested record are exempt from disclosure, any 'reasonably segregable' information from those documents must be disclosed after redaction of the exempt information unless the exempt portions are 'inextricably intertwined with exempt portions.'"  Johnson v. Executive Office for U.S. Attorneys, 310 F.3d 771, 776 (D.C. Cir. 2002) (quoting 5 U.S.C. § 552(b)) (citations omitted).  For example, Exemption 5 permits the discovery of purely factual material "that is severable without compromising the private remainder of the documents."  EPA v. Mink, 410 U.S. 73, 91 (1973).  "The fact/opinion distinction, however, is not always dispositive; in some instances, 'the disclosure of even purely factual material may so expose the deliberative process within an agency' that the material is appropriately held privileged."  Petroleum Information Corp. v. U.S. Dept. of Interior, 976 F.2d 1429, 1434 (quoting Mead Data Central, Inc. v. Department of Air Force, 566 F.2d 242, 256 (D.C. Cir. 1977)).

a.   <u>Calvert Draft Statements</u>

The Friedman <u>Vaughn</u> index bearing on the White Pine Act Documents provides that the Calvert Draft Statements fall within the scope of Exemption 5 because they indicate the development of a governmental position.  <u>See</u> Friedman Decl., ¶ 9A.  The documents withheld (WP3, WP9-14, WP16-18, WP20-23) are drafts of the proposed statement to be offered to Congress by a DOI witness, Deputy Assistant Secretary Calvert, setting forth the Administration's position on S. 3722.  <u>Id.</u>  With regards to segregating facts from deliberative materials, such as opinions, the Friedman <u>Vaughn</u> index provided with specificity (to the extent it could without disclosing the communications outright) what portions of the drafts were withheld from production: tentative statements regarding the Administration's position on the White Pine Act that included concerns or questions with specific language or proposals of the legislation; provisions suggesting changes in the legislation and marginal notes; questions; and requests for further guidance from reviewers from the DOI and within the Executive Branch.  <u>Id.</u>  The final statement, dated November 16, 2006, was released in full to plaintiff.  <u>Id.</u>

According to plaintiff, the unredacted portions of the drafts produced raise questions as to whether all reasonably segregable non-deliberative materials have been produced by defendant.  <u>See</u> Pl.'s Mem. at p. 27.  In particular, plaintiff pointed to the November 11, 2006 draft (WP3) as proof of his contention, where the government redacted the number of dollars from the amount of money that has been generated from SNPLMA land sales, the amounts given to Nevada, how much had been deposited into a federal special account, and how much of that money was made available and has

been spent for the benefit of the DOI.  See Appendix, Doc. WP3, App. 21-22, 24.  This Court agrees with plaintiff that the dollar amounts are facts that should not have been redacted under the deliberative process privilege.  However, plaintiff is not requesting that these dollar amounts be disclosed (in fact, he already has that information through the disclosure of WP7 at App. 27 and WP 14 at App. 41); rather, he has focused on this failure to disclose by defendants as a basis for requiring an in camera inspection by this Court of all White Pine Act Documents defendants have withheld to determine whether there is any additional segregable information that should be produced.[14]  This Court does not find that the improper redaction of one item constituted bad faith on the part of defendants so as to mandate an in camera inspection by the Court of all White Pine Act Documents.  Indeed, "bad faith" connotes a deliberative state of mind and this Court cannot find bad faith by defendants to the level required to order an in camera inspection of all withheld material, particularly where the unredacted portions notify the reader that the redacted portions are dollar amounts and this information is not even directly relevant to plaintiff's FOIA request as to the Ballardini Ranch.  At most, the redaction of the dollar amounts qualifies as a simple error on the part of defendants that does rise to the level of bad faith.  See Center for Auto Safety v. E.P.A., 731 F.2d 16, 24 n. 9 (D.C. Cir. 1984) ("If there is a sentence or two that is both non-exempt and "reasonably" segregable, that conclusion is not so obvious that the agency's failure to

---

[14] This Court reject's defendants' argument that plaintiff cannot request an in camera inspection on summary judgment because he asserted no such request for relief.  See Gavin, 2007 WL 2454156 at *3 (citing Barney, 618 F.2d at 1272) (finding that a court may exercise evaluate assertions of the deliberative process privilege by evaluating "the propriety of the claimed exemptions on the record before it, it may order the agency to submit more detailed affidavits or a Vaughn index, or review documents in camera.").

reach it can be said to be bad faith as opposed to simple error.") (internal citation omitted).

b.   Draft Position Statements

The Friedman Vaughn index provides that the Draft Position Statements are drafts of the Administration's position on S. 3722.  See Friedman Decl., ¶ 9B.  Since these are drafts, the BLM stated that they are subject to withholding in full under Exemption 5.  Id.  Despite this assertion, the BLM segregated factual information for production, as is evidenced by the fact that the majority of WP5 and WP7 were not redacted but released to plaintiff.  Id.

The Friedman Vaughn index also stated that while factual portions of the position statements were released, the following portions of the Draft Position Statements pertaining to the White Pine Act were withheld from production: characterizations; recommendations; questions; discussions; opinions and plans for further proceedings. Id.

Plaintiff argued that an examination of the multiple drafts of the Draft Position Statements justifies an in camera inspection of all White Pine Act Documents to ensure that all segregable non-deliberative information is produced.  See Pl.'s Mem. at p. 28. He supported this claim by comparing draft WP14 with drafts WP16 and WP18.  Id. According to plaintiff, portions of the Draft Position Statements in WP14, that were not redacted, are redacted in later versions WP16 and WP18.  Id.  The thrust of plaintiff's argument is that because defendants redacted portions of factual and non-deliberative matter in later versions of the Draft Position Statements (WP16 and WP18) that were produced in an earlier version (WP14), an in camera inspection and determination by

this Court is needed to determine whether all redacted information in the White Pine Act Documents was proper.  Id.

This Court has compared the redacted portions of WP16 and WP18 with the earlier WP14 version.  Based on this review, it finds that the majority of the materials that were redacted in the WP16 and WP18 versions (and were not redacted in the earlier WP14 version) constituted opinions and views governed by the deliberative process privilege that were inextricably intertwined with facts.  For example, WP14 contained an unredacted paragraph regarding what changes the DOI wanted made to the proposed White Pine Act, including the expansion of the SNPLMA's parks, trials, and natural areas provision to include the acquisition of the Ballardini Ranch for a county park in Washoe County, Nevada.  See Appendix, WP14 at App. 42.  This language was redacted from WP16 and WP 18.  Id., WP16 at App. 58; WP18 at App. 72.  This Court concludes that this redacted position and recommendation in WP14 is the type of deliberative material that the Exemption 5 was meant to cover and contains no facts that could segregated from that position.  In other words, defendants were justified in redacting this portion from WP16 and WP18.

Further, those factual portions in the WP16 and WP18 that have been redacted do not evidence any bad faith on the part of the defendants to keep responsive information out of the hands of plaintiff, particularly where none of the redacted information related to items 3 or 4 of plaintiff's FOIA request (i.e. documents evidencing the proposed funding or acquisition of portions of the Ballardini Ranch and other properties in Washoe County under the White Pine Act, or other federal legislation proposals to fund acquisition of the Ballardini Ranch property).  The only facts contained

in WP14 that this Court could discern related to the Ballardini Ranch, were not redacted in WP16 or WP18.  <u>See</u> Appendix, WP14 at App. 42; WP16 at App. 57; WP18 at App. 71.  As such, this Court concludes that an <u>in</u> <u>camera</u> inspection of the White Pine Act Documents is not required on this basis.

c.   <u>BLM Comments</u>

The BLM Comments on the Senate bill for the White Pine Act (WP1 and WP15 in the Friedman <u>Vaughn</u> Index) "were prepared for transmittal to the BLM central office in Washington for use in developing the Department's and ultimately the Administration's position on the proposed legislation."  <u>See</u> Friedman Decl., ¶ 9C.  The Friedman <u>Vaughn</u> index provided that the following portions of the BLM Comments were withheld from production: BLM Nevada's recommended position on the proposed legislation; BLM Nevada's section by section analysis of the White Pine legislation; recommendations; and questions on each section of the proposed legislation.  <u>Id.</u>

Plaintiff speculates that because almost the entire contents of WP-1 and WP-15 have been redacted, there must be some portions of these documents that are non-deliberative given their "structure."  <u>See</u> Pl.'s Mem. at p. 29.  Plaintiffs are correct that large portions of these documents are redacted.  <u>See</u> Appendix, Docs. WP1 and WP15, App. 77-87.

To the extent that defendants have argued against the production of these draft documents – because they are successive versions of a document and as such, would tend to show the internal development of an agency's position on a policy matter (<u>see</u> Defs.' Opp. Mem. at p. 10) – this Court rejects, as have other courts, such a broad proposition.  <u>See</u> <u>Keeper of the Mountains Foundation v. U.S. Dept. of Justice</u>, 514 F.

Supp.2d 837, 855-56 (S.D. W. Va. 2007) (finding the argument that there is no reasonably segregable, non-exempt information that can be disclosed from the drafts, because the process by which a draft evolves into a final document is itself a deliberative process, to be contrary to language 5 U.S.C. § 552(b) and stating that "[a]ny reasonably segregable portion of a record shall be provided to any person."); Electronic Privacy Information Center v. Transportation Sec. Admin., NO. CIV.A. 03-1846 CKK, 2006 WL 626925 at *7 (D.D.C. March 12, 2006) (finding that the proposition that disclosure of any facts in the drafts would reveal judgments made by staff would gut the segregability requirement of FOIA).

However, "where draft documents involve significant policy judgments, an agency will not be in a position to protect itself from revealing its internal deliberative process via segregation when the final document has not even been created, approved, and released. In this respect, drafts of un-released documents and drafts of released documents are simply not the same." Nevada v. U.S. Dept. of Energy, 517 F. Supp.2d 1245, 1265 (D. Nev. 2007).

Here, the Friedman Vaughn index sets forth that the BLM Comments were prepared for transmittal to the BLM central office in Washington, D.C., for use in developing the Department's and ultimately the Administration's position on the proposed legislation. See Friedman Decl., ¶ 9C. There was no final draft of the BLM Comments that was released. Instead, the comments were used to come up with a final position on the proposed legislation. Therefore, defendants would not be able to protect themselves from revealing their internal deliberative process via segregation if

they were required to produce drafts of documents that were never ultimately released.[15]

Having offered this Court only speculation that there must be material within the BLM Comments that can be segregated to counter defendants' sworn statements regarding their grounds for withholding the drafts, this Court has no basis for concluding that defendants are withholding materials in bad faith.  Accordingly, it finds that there are no grounds for conducting an <u>in camera</u> inspection of these documents.

### 3.    Conclusion

For all the reasons stated above, this Court finds that defendants' motion for summary judgment as it relates to propriety of their assertion of the deliberative process privilege should be granted for those documents they withheld or produced to plaintiff in redacted form, and plaintiff's motion for summary judgment as it relates to its request for an <u>in camera</u> inspection of these documents should be denied.  However, to the extent that defendants failed to conduct an additional search for and produce documents responsive to items 3 and 4 of plaintiff's FOIA request for documents generated after October 13, 2006 through the date of Gbneou's departure, the Court grants this part of plaintiff's motion and denies that part of defendants' motion.  As to the balance of

---

[15]    Plaintiff argued for the first time in his Reply Memorandum that this Court should conduct an <u>in camera</u> inspection of WP1, WP3, WP5 through WP18 and WP20 through WP23 because defendants failed to provide evidence that these documents were not disclosed to individuals outside of the executive agencies.  <u>See</u> Reply Memorandum in Support of Motion for <u>In Camera</u> Review of Documents Withheld and Redacted on Claims of Deliberative Privilege and for Summary Judgment at p. 6.  This Court does not reach this issue given that the argument was improperly brought up by plaintiff for the first time in his reply, thus preventing defendants from having any opportunity to respond to it.  <u>See</u> <u>Simon v. Yecke</u>, No. Civ. 03-6500 JNE/JGL, 2004 WL 3739590 at *4 n. 4 (D. Minn. June 1, 2004) (noting that "it is improper to bring wholly new arguments in a Memorandum in Reply").

defendants' search for documents responsive to plaintiff's FOIA request, this Court finds that their search for documents was reasonably calculated to uncover relevant and responsive documents to plaintiff's FOIA request, and that plaintiff presented no facts to show that their searches performed were not done in good faith.

## RECOMMENDATION

For the reasons set forth above and based on all the files, records, and proceedings herein,

**IT IS RECOMMENDED THAT:**

1.      Plaintiff's Motion for In Camera Review of Documents Withheld and Redacted on Claims of Deliberative Privilege and for Summary Judgment [Docket No. 19] be **GRANTED** in part and **DENIED** in part.

2.      Defendants' Motion for Summary Judgment [Docket Nos. 22, 25] be **GRANTED** in part and **DENIED** in part.

3.      Defendants should be required to conduct an additional search for documents responsive to items 3 and 4 of plaintiff's FOIA request for documents generated after October 13, 2006 through the date of Amy Gbneou's departure, and the search shall be directed to all sources previously contacted for responsive documents. In addition, defendants should be required to produce to plaintiff on or before **September 15, 2008**, all additional responsive documents or a Vaughn index for all responsive documents withheld or redacted for any reason.

Dated:       August 12, 2008

s/ *Janie S. Mayeron*
JANIE S. MAYERON
United States Magistrate Judge

Under D.Minn. LR 72.2(b) any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties by **August 29, 2008**, a writing which specifically identifies those portions of this Report to which objections are made and the basis of those objections.  A party may respond to the objecting party's brief within ten days after service thereof.  All briefs filed under this Rules shall be limited to 3500 words.  A judge shall make a de novo determination of those portions to which objection is made.  This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable directly to the Circuit Court of Appeals.

Unless the parties stipulate that the District Court is not required by 28 U.S.C. § 636 to review a transcript of the hearing in order to resolve all objections made to this Report and Recommendations, the party making the objections shall timely order and file a complete transcript of the hearing on or before **August 29, 2008**.